## S11A1709. ROGERS v. THE STATE.
### (721 SE2d 864)

CARLEY, Presiding Justice.

Appellant Eric Rogers was indicted for the malice and felony murders of Mark Birmingham and Darnell Patterson. The trial court denied a motion for discharge and acquittal which alleged violations of Appellant's constitutional and statutory rights to a speedy trial, and this Court affirmed. *Rogers v. State,* 286 Ga. 387 (688 SE2d 344) (2010). After a jury trial, Appellant was found guilty of all counts. The felony murder verdicts were vacated by operation of law. The trial court entered judgments of conviction on the malice murder verdicts and imposed two consecutive sentences of life imprisonment. A motion for new trial was denied, and Appellant filed a timely notice of appeal.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that, when Appellant was approximately 19 years old, he befriended his six-year-old nephew Chris Probst and then began engaging in homosexual acts with Probst which continued until he was age 12, resumed at age 15, and ceased at age 18. In 1991, when Appellant was 30 years old, he also befriended 15-year-old Mark Birmingham and began engaging in homosexual acts with him. Probst testified that he witnessed some of Appellant's homosexual

---

[*] The crimes occurred on August 17, 1991 and on January 27, 1995, and the grand jury returned an indictment on August 23, 2007. The jury found Appellant guilty on March 31, 2010, and, on the following day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on April 29, 2010, amended on December 9 and 22, 2010 and on February 3, 2011, and denied on June 2, 2011. Appellant filed the notice of appeal on June 14, 2011. The case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

acts with Birmingham, that Appellant took Probst into the woods near their DeKalb County home where Birmingham lay after being shot to death, and that Probst helped Appellant dig a grave.

In 1994, Appellant befriended 18-year-old Darnell Patterson and began engaging in homosexual acts with him. After Patterson disappeared in 1995, Appellant moved to Mississippi and admitted to Richard Husband that, after attending the Super Bowl with Patterson and taking him back to Atlanta, Appellant murdered Patterson by shooting him in the back of the head. While in Mississippi in 2000, Appellant befriended 18-year-old Benjie Keyes, hit him in the head with a hammer, broke two of his teeth with a gun, handcuffed him to a pipe, forced him to perform homosexual acts, and took him into the woods to kill him. Keyes managed to talk Appellant out of killing him. Appellant was arrested, convicted of aggravated assault, and imprisoned in Mississippi. Probst led police officers to the wooded spot where Birmingham's body was buried. Patterson's body was never found.

With respect to the murder of Patterson, Appellant asserts that his confession to Husband was not corroborated by sufficient supporting evidence and was not sufficient proof that venue was proper in DeKalb County. As to venue, OCGA § 17-2-2 (h) provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." "[U]se of subsection (h) to determine venue in a homicide case is not precluded. [Cits.]" *Nelson v. State*, 262 Ga. 763, 765 (2) (426 SE2d 357) (1993), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999). Appellant appears to argue that the standard of proof must be "beyond a reasonable doubt" and that the additional language "might have been committed" is conflicting and illogical. As Appellant concedes, however, we have upheld OCGA § 17-2-2 (h) as a constitutional mechanism for resolving the issue of venue when the location in which the crime is committed cannot be determined with certainty. *Hinton v. State*, 280 Ga. 811, 815 (2) (631 SE2d 365) (2006). Furthermore, this Court has held that subsection (h), whether applied in a homicide or nonhomicide case, is not unconstitutionally vague or indefinite. *Felker v. State*, 252 Ga. 351, 367 (2) (b) (314 SE2d 621) (1984). Likewise, we now perceive no inconsistency in the wording of OCGA § 17-2-2 (h). The evidence relevant to venue showed that Patterson was last seen alive in DeKalb County, that he left from that county, that Appellant confessed that he shot Patterson back in Atlanta which is partly in DeKalb County, and that Appellant and Patterson had been together every day at Appellant's residence in DeKalb County where Appellant had previously shot

Birmingham and had buried him in the woods in that county. This evidence "was sufficient to show beyond a reasonable doubt that the murder might have been committed in DeKalb County." *Hinton v. State*, supra at 814 (1).

As for the corroboration vel non of Appellant's confession to Husband, OCGA § 24-3-53 provides that "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." "However, a confession, freely and voluntarily made, is evidence of the highest character, and any corroboration thereof will be sufficient to sustain a conviction. [Cit.]" *Carswell v. State*, 268 Ga. 531, 532 (1) (491 SE2d 343) (1997). "A confession need be corroborated only by any particular, not every particular." *Moore v. State*, 285 Ga. 157, 161 (3) (674 SE2d 315) (2009). In determining whether a confession is corroborated, the jury is not required to find the corpus delicti beyond a reasonable doubt from evidence separate from and wholly independent of the confession, and instead "may consider the confession along with other facts and circumstances independent of and separate from it in determining whether or not the corpus delicti has been established to their satisfaction." *Gilder v. State*, 219 Ga. 495, 497 (2) (133 SE2d 861) (1963). "To establish the corpus delicti in a homicide prosecution, the State must prove that a death occurred, but there is no requirement that a dead body be produced. [Cits.]" *Richardson v. State*, 276 Ga. 548, 549 (1) (580 SE2d 224) (2003). Appellant's confession to Husband was sufficiently corroborated by evidence that Patterson disappeared near the time of the Super Bowl, that Patterson left with Appellant to go to the Super Bowl, that Appellant always carried a .380 handgun, and that he had shot Birmingham and was going to shoot Keyes. See *Moore v. State*, supra; *McIlwain v. State*, 264 Ga. 382 (1) (445 SE2d 261) (1994). The evidence adduced at trial and summarized above was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the murders of both Patterson and Birmingham. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hinton v. State*, supra; *White v. State*, 263 Ga. 94, 95-97 (1) (428 SE2d 789) (1993).

2. At a pre-trial hearing on the admissibility of Appellant's statement to Georgia investigators at the Mississippi prison, defense counsel requested redaction of those portions of the statement where Appellant identified which of certain named individuals he had had sex with. She also argued that admission of Appellant's statement that he did not want to answer the same question with respect to Probst would constitute an improper comment on Appellant's right to remain silent. After being asked by the State to reserve ruling on that specific statement, the trial court excluded the portions in question except for that related to Probst and directed both parties

not to go into the issue regarding Probst until the jury is excused and the issue is discussed again. At trial, Investigator Alan Traylor testified, in response to the prosecutor's questions and without objection, that Appellant did not want to talk about the question of whether he had had sex with Probst. Appellant contends that the State's disregard of the trial court's preliminary ruling concerning invocation of Appellant's right to remain silent constituted prosecutorial misconduct.

"Absent exceptional circumstances, claims of prosecutorial misconduct raised[, as in this case,] for the first time after trial 'will not warrant reversal on appeal,' [cit.]" *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993). We find no such exceptional circumstances and further note that " '[t]he "contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." (Cit.)' [Cit.]" *Sanders v. State*, 289 Ga. 655, 659 (2) (715 SE2d 124) (2011). Where, as here, "the trial court reserves ruling on a challenge to the admission of evidence, a defendant's subsequent failure to object to the testimony when it is admitted or to invoke a ruling by the trial court preserves nothing for appellate review. [Cits.]" *Dasher v. State*, 285 Ga. 308, 311 (4) (676 SE2d 181) (2009). See also *Stroud v. State*, 272 Ga. 76, 77 (3) (526 SE2d 344) (2000). " '[A] defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action. (Cit.)' [Cit.]" *Peterson v. State*, 274 Ga. 165, 169 (3) (549 SE2d 387) (2001).

Moreover, Appellant's refusal to answer a particular question during the custodial interview in Mississippi was admissible. We have held that an assertion of the right to remain silent during custodial interrogation "must be unambiguous and unequivocal before interrogators are required to stop their questioning [cit.] . . ." *Green v. State*, 275 Ga. 569, 572 (2) (570 SE2d 207) (2002).

> Resolution of that question depends on whether [the accused] articulated a " 'desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.' . . ." [Cit.]

*Perez v. State*, 283 Ga. 196, 200 (657 SE2d 846) (2008). Numerous cases "have sanctioned the admissibility of testimony regarding a defendant's silence or nonverbal conduct during questioning subsequent to a valid waiver of rights." *People v. Hart*, 828 NE2d 260, 273 (Ill. 2005). See also *Sanders v. State*, 230 Ga. App. 176, 177 (3) (495 SE2d 653) (1998). Thus, Appellant's reliance on *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991) is misplaced. That case "did

not involve a factual scenario in which the defendant had *waived* his right to silence" prior to giving a statement. (Emphasis in original.) *Thomas v. State*, 726 S2d 357, 358 (Fla. App. 1999). Appellant specifically waived his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), including his right to remain silent, and responded to Investigator Traylor's questioning. Many cases have held

> in such a situation that a defendant's failure to respond to *some* questions during questioning—while responding to others—may be the subject of testimony at defendant's trial, at least where the defendant's silence cannot be construed as an attempt to reassert his rights and cut off questioning altogether. [Cits.] (Emphasis in original.)

*People v. Hart*, supra. See also *United States v. Burns*, 276 F3d 439, 441-442 (I) (8th Cir. 2002); *Commonwealth v. Senior*, 744 NE2d 614, 621-622 (4) (Mass. 2001); *Thomas v. State*, supra. In *Fare v. Michael C.*, 442 U. S. 707, 727 (99 SC 2560, 61 LE2d 197) (1979), "[t]he Supreme Court of the United States . . . recognized that a defendant's refusal to answer certain questions is not the equivalent of a request to end the interrogation." *United States v. Reynolds*, 743 FSupp.2d 1087, 1090 (II) (A) (D.S.D. 2010). As the Eleventh Circuit has indicated, it is also consistent with *Davis v. United States*, 512 U. S. 452 (114 SC 2350, 129 LE2d 362) (1994), which we extended in *Perez* to the right to remain silent, to hold that

> a suspect's refusal to answer certain questions is not tantamount to the invocation, either equivocal or unequivocal, of the constitutional right to remain silent and that questioning may continue until the suspect articulates in some manner that he wishes the questioning to cease.

*United States v. Mikell*, 102 F3d 470, 477 (III) (B) (11th Cir. 1996). " '[T]he refusal of a defendant to answer a particular question during a custodial interrogation is not an invocation of the right to remain silent.' [Cits.]" *State v. Fluker*, 1 A3d 1216, 1223 (I) (Conn. App. 2010). "This is not a case in which testimony showed [Appellant] refused to give a statement or specifically invoked his right to remain silent. [Cits.]" *Sanders v. State*, supra. He "never refused to answer any additional or follow-up questions. He never stated that he wanted questioning to cease." *United States v. Reynolds*, supra.

> The defendant's failure to answer one specific question "must be interpreted in the context of his willingness to

talk both immediately prior to and subsequent to" this particular question. [Cit.] . . . [F]or the rule of *Miranda* . . . to apply, "there must be . . . an *expressed* unwillingness to continue," which [Appellant] did not manifest. [Cit.] [Contrary to his argument on appeal, he] could not "pick and choose," because "(i)f he talks, what he says or omits is to be judged on its merits or demerits, and not on some artificial standard that only the part that helps him can be later referred to. . . ." [Cit.] (Emphasis in original.)

*Commonwealth v. Senior*, supra at 621 (4). " '[S]elective silence is not protected. . . .' [Cits.]" *State v. Fluker*, supra at 1224 (I). "A defendant may indicate an unwillingness to discuss certain subjects without manifesting a desire to terminate 'an interrogation already in progress.' [Cit.]" *People v. Silva*, 754 P2d 1070, 1083 (III) (K) (Cal. 1988) (In Bank).

We conclude that the trial court properly found, in its order denying the motion for new trial, that Appellant's expressed desire not to talk about a particular "subject in the middle of a lengthy *Mirandized* statement is not an 'invocation of the right to silence' so as to raise the concerns addressed . . . in *Mallory v. State*." Thus, even if this enumeration was preserved, it is without merit.

3. Appellant further contends that the trial court erred in admitting evidence of sexual misconduct by him against Probst, Birmingham, and Keyes.

The testimony regarding Probst and Keyes is referred to as similar transaction evidence under Georgia law. Although we recently held that a defendant is not required to repeat an objection at trial to such evidence that was raised and overruled at a hearing pursuant to Uniform Superior Court Rule 31.3 (B), we also held that our ordinary rules for objecting to evidence apply, including the standard practice of allowing parties to raise on appeal only the same objections which were properly preserved in the trial court. *Whitehead v. State*, 287 Ga. 242, 246, 248-249 (2) (695 SE2d 255) (2010) (citing *Hunter v. State*, 202 Ga. App. 195, 196-198 (3) (413 SE2d 526) (1991)). Not all of Appellant's specific contentions were raised at the pre-trial hearing. Thus, those grounds of objection to the similar transaction evidence have been waived. *Whitehead v. State*, supra. See also *Arrington v. State*, 286 Ga. 335, 342 (13) (a) (687 SE2d 438) (2009); *Murphy v. State*, 263 Ga. App. 62, 63-64 (1) (587 SE2d 223) (2003). Likewise, those grounds of objection to Appellant's prior difficulties with Birmingham which are raised for the first time on appeal are also waived. *Hartman v. State*, 266 Ga. 613, 614 (2) (469 SE2d 163) (1996); *Hamilton v. State*, 260 Ga. 3, 4 (2) (b) (ii) (389 SE2d 225) (1990).

Moreover, Appellant's contentions regarding the evidence of his sexual misconduct are without merit. As the trial court specifically found, this evidence showed homosexual activity which occurred between the defendant and much younger victims by use of force or coercion. Thus, even though two of the relationships did not ultimately result in the victim's death, the evidence was properly tendered and admitted, not to show that Appellant committed the crimes charged, but for the appropriate purposes of showing a course of conduct and pattern of behavior. *Humphrey v. State*, 281 Ga. 596, 598 (2) (642 SE2d 23) (2007); *Hinton v. State*, supra at 818 (6); *Head v. State*, 276 Ga. 131, 135 (5) (575 SE2d 883) (2003). Appellant's argument that Probst's and Keyes' testimony should have been excluded because it was not credible is not pertinent to this similar transaction challenge, as the issue of the witnesses' credibility was a matter for the trial court prior to trial and for the jury at trial, not for this appellate court. *Henderson v. State*, 303 Ga. App. 531, 536 (3) (694 SE2d 185) (2010). Furthermore, the trial court did not abuse its discretion by not excluding the evidence on the ground that its prejudicial effect outweighed its probative value. See *Ledford v. State*, 289 Ga. 70, 83 (12) (a) (709 SE2d 239) (2011).

Appellant argues that the prior sexual misconduct evidence was too remote in time from the trial to be probative and reliable. However, the relevant measure has virtually always been the lapse of time between the prior similar offense and commission of the offense for which the defendant is being tried. See *Henry v. State*, 278 Ga. 554, 556 (3) (604 SE2d 469) (2004); *Evans v. State*, 287 Ga. App. 74, 76 (2) (651 SE2d 363) (2007); Alexander Scherr, *Green Ga. Law of Evidence* § 71.4 (6th ed.). This is logical because the relevance of the purposes for which a similar transaction can be admitted is not diminished by the additional passage of time between commission of the crimes charged and the trial. Moreover, because Appellant spent most of the time between the assault on Keyes and the trial in this case in prison, the interval is acceptable even if measured to the time of trial, and we conclude that the prior similar transactions were not inadmissible based upon remoteness in time. *Hinton v. State*, supra. In addition, the sexual misconduct against Probst continued until after the beginning of Appellant's relationship with Birmingham. " '(T)he lapse of time generally goes to the weight and credibility of the evidence, not to its admissibility. (Cits.)' " *Hinton v. State*, supra at 817 (6). "This has been especially true in cases where[, as here,] there has been a continuous course of criminal conduct or the defendant has been incarcerated for some period between acts. [Cits.]" *Pareja v. State*, 286 Ga. 117, 120 (686 SE2d 232) (2009).

We note that, contrary to another of Appellant's contentions, the trial court included the sexual misconduct against Birmingham in its

findings with respect to the similar transaction evidence even though it was not required to make the same findings for prior difficulties as for similar transactions. *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998). Furthermore,

> "[u]nlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried. Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted." [Cit.]

*Withers v. State*, 282 Ga. 656, 658 (2) (653 SE2d 40) (2007).

4. After the jury had deliberated about four hours, soon after 6:00 p.m. on a Wednesday, it submitted a question and also requested to rehear the testimony of Husband and Probst. The trial judge consulted with counsel, answered the question, and informed the jury that replaying the testimony would take about two-and-a-half hours and would have to be done that evening because of the upcoming deadline caused by the holiday closing of the court on Friday. The trial judge asked the jurors to let him know what they wanted to do in about ten minutes, and the jury instead returned in about 35 minutes after reaching verdicts on all charges. Appellant urges that the trial court's actions, including its failure to give the jurors the option to rehear the testimony in the morning, improperly pressured and coerced the jury into rendering a hasty guilty verdict.

As Appellant concedes, however, defense counsel never objected to the trial court's actions. Therefore, this issue is waived on appeal. *Rivera v. State*, 282 Ga. 355, 365 (12) (647 SE2d 70) (2007); *Fleming v. State*, 243 Ga. 120, 122 (2) (252 SE2d 609) (1979); *Morales v. State*, 305 Ga. App. 569, 571 (3) (699 SE2d 864) (2010). The trial court's explanation in response to the jury's request is not governed by OCGA § 17-8-58 and its "plain error" rule, as "an objection to explanatory comments is not the same as an exception to the substance of [a] recharge. [Cit.]" *Brown v. State*, 221 Ga. App. 454 (471 SE2d 527) (1996). See also *Parker v. State*, 282 Ga. 897, 901 (9)

(655 SE2d 582) (2008) (also distinguishing between an exception to the substance of a jury charge and the trial court's response to a jury's request for further explanation). Moreover, even if OCGA § 17-8-58 were applicable, the trial court's explanatory response could not constitute plain error pursuant to the standard set forth in *State v. Kelly*, 290 Ga. 29, 32 (2) (a) (718 SE2d 232) (2011), as it "was not obviously erroneous, nor did it likely affect the outcome of the proceeding." *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011). "[C]onsidering the totality of the circumstances, we conclude that the verdict was not coerced by the trial court. [Cit.]" *Rivera v. State*, supra. See also *Hill v. State*, 114 Ga. App. 527, 529 (3) (151 SE2d 818) (1966). There is no evidence to substantiate Appellant's argument. *Fleming v. State*, supra. "The jury did not communicate to the trial court that it was deadlocked or that it was facing any other problem as a result of" the requirement that any rehearing of the testimony occur that evening. *Rivera v. State*, supra at 366 (12). The trial court's statements "in this case cannot be considered coercive because [they] did not imply in any way that a verdict was required." *Manley v. State*, 284 Ga. 840, 847 (4) (672 SE2d 654) (2009).

5. On motion for new trial, Appellant claimed that his pre-trial counsel rendered ineffective assistance in the interlocutory appeal from the denial of the motion for discharge and acquittal. The State filed a motion to dismiss this claim, which the trial court granted. Appellant separately enumerates this ruling as error, although he also raises several claims of ineffective assistance in other enumerations.

In *Wilson v. State*, 286 Ga. 141, 144-145 (4) (686 SE2d 104) (2009), we held that a defendant cannot resuscitate procedurally barred claims of ineffective assistance of trial counsel simply by bootstrapping them to a claim of ineffectiveness of appellate counsel. However, we also recognized that claims of ineffective assistance of appellate counsel which are premised on other claims that are not procedurally barred may be raised on appeal by new appellate counsel. *Wilson v. State*, supra at 144 (4). Assuming that Appellant's claim of ineffective interlocutory appellate counsel is properly raised because it is premised on a claim not procedurally barred, a remand to the trial court for an evidentiary hearing would be necessary unless we can "determine from the record that the two-prong test for ineffectiveness cannot be met. [Cits.]" *Wilson v. State*, supra at 145 (4). Under that test as set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Appellant

must show that counsel's performance was not reasonable under the circumstances and that counsel's deficient per-

formance prejudiced him, i.e., that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Cits.] When appellate counsel's performance is alleged to be deficient because of a failure to assert an error on appeal, "the controlling principle is 'whether (appellate counsel's) decision was a reasonable tactical move which any competent attorney in the same situation would have made.' (Cit.)" [Cits.] With respect to the prejudice prong, a petitioner must show that, but for appellate counsel's errors or omissions, "there was a reasonable probability that the outcome of the appeal would have been different. (Cit.)" [Cit.]

*Hall v. Lewis*, 286 Ga. 767, 769-770 (II) (692 SE2d 580) (2010). See also *Shorter v. Waters*, 275 Ga. 581 (571 SE2d 373) (2002); *Battles v. Chapman*, 269 Ga. 702 (506 SE2d 838) (1998). Appellant argues that the performance of interlocutory appellate counsel was deficient because she failed to raise the claim that the State's delay prior to arrest and indictment violated Appellant's due process rights under the Fifth and Fourteenth Amendments. See *Jones v. State*, 284 Ga. 320 (1) (667 SE2d 49) (2008). However, Appellant's failure to raise this particular constitutional issue in the trial court forfeited his right to raise it on appeal. *Mullins v. State*, 270 Ga. 450, 451 (3) (511 SE2d 165) (1999). Therefore, if pre-trial counsel had raised the issue on interlocutory appeal, there clearly is no reasonable probability that the outcome of that appeal would have been different. See *Hall v. Lewis*, supra. Current counsel has not asserted either on motion for new trial or in this appeal that pre-trial counsel was ineffective for failing to raise the due process issue at the trial level, nor did the trial court make any ruling thereon. Thus, any such ineffectiveness claim has been waived in this appeal. *Norris v. State*, 289 Ga. 154, 158 (2) (709 SE2d 792) (2011); *Nichols v. State*, 285 Ga. 784, 785 (2) (a) (683 SE2d 610) (2009). We acknowledge, however, that it may be appropriate in a future habeas proceeding for Appellant to raise the ineffectiveness of current appellate counsel in waiving the claim of ineffective assistance by pre-trial counsel in prosecuting the motion for discharge and acquittal in the trial court.

Other claims by Appellant of ineffective assistance are that his trial counsel did not adequately cross-examine Probst and failed to seek a continuance after receiving Husband's statement at trial. However, Appellant did not offer any evidence at the motion for new trial hearing as to how additional time to interview Husband or to prepare further for cross-examination would have benefitted his case. *Childs v. State*, 287 Ga. 488, 494 (7) (696 SE2d 670) (2010). Furthermore, Appellant failed to call either Husband or Probst, or

otherwise prove what either witness' "testimony on cross-examination might have been, at the motion for new trial hearing. [Appellant] has, therefore, not met his burden of showing there is a reasonable probability the result of the proceedings would have been different" if cross-examination had been better prepared. *Christian v. State*, 297 Ga. App. 596, 599 (2) (b) (677 SE2d 767) (2009).

Other ineffectiveness claims involve trial counsel's failure to make objections which we have already determined would not have had any merit. "'"Failure to make a meritless objection cannot be evidence of ineffective assistance." (Cit.)' [Cits.]" *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005). Remaining ineffectiveness claims are waived, as they were neither raised nor ruled upon in the trial court. *Norris v. State*, supra; *Nichols v. State*, supra.

6. In his final enumeration regarding the denial of the motion for new trial, Appellant briefly makes other claims which do not involve the alleged ineffective assistance of counsel. Although Appellant contends that the trial court erroneously failed to sever the Birmingham murder charges from the Patterson murder charges, there is no motion to sever in the record. *Pye v. State*, 274 Ga. 839, 842 (6) (561 SE2d 109) (2002). Because Appellant failed to request a severance of counts, this issue has been waived. *Brown v. State*, 300 Ga. App. 359, 362 (4) (685 SE2d 377) (2009).

Appellant further argues under this same enumeration, which is expressly limited to the motion for new trial, that numerous irrelevant and prejudicial photographs showing a sexual interest in adolescent black youths were erroneously admitted into evidence. However, this particular claim was not raised in the motion for new trial and has therefore been waived. See *Brown v. State*, 289 Ga. 259, 264 (5) (710 SE2d 751) (2011); *Whitus v. State*, 287 Ga. 801, 805 (3) (700 SE2d 377) (2010). Moreover, such photographs were admissible because they could be linked to Appellant's pattern of homosexual relationships with the young African-American victims before their disappearance. See *State v. Tyson*, 273 Ga. 690, 694 (4) (544 SE2d 444) (2001).

7. Appellant also requests that the allegations in the motion for new trial be incorporated by reference. To the extent that this request "asserts a claim of error, it is deemed abandoned. It is not supported in the brief by citation of authority, argument, or reference to the record. [Cit.]" *Sapeu v. State*, 222 Ga. App. 509, 513-514 (10) (474 SE2d 703) (1996). See also Supreme Court Rule 22.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Lloyd J. Matthews,* for appellant.

*Robert D. James, Jr.*, District Attorney, *Leonora Grant*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Benjamin H. Pierman*, Assistant Attorney General, for appellee.

