## S11A1838. WHEELER v. THE STATE.

(725 SE2d 580)

MELTON, Justice.

Following a jury trial, 73-year-old Martin Wheeler was found guilty of malice murder, felony murder, and aggravated assault in connection with the strangling, beating, and stabbing death of his elderly and wheelchair-bound ex-girlfriend, Pearl Johnson.[1] On appeal Wheeler contends, among other things, that the evidence presented at trial was insufficient to sustain his convictions and that his trial counsel was ineffective. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on the evening of January 6, 2007, Johnson allowed Wheeler to enter her home. The next day, police found Johnson's beaten, stabbed, and strangled body in her living room, and blood evidence collected at the scene later connected Wheeler to the crime. At trial, Wheeler's ex-wife of twenty years and three of his ex-girlfriends testified about Wheeler's physical abuse of them and his attempts to strangle them — sometimes nearly to the point of death — and his threatening of them with a knife. Johnson's children also testified about Wheeler having physically abused and strangled their mother in the past. A letter written by Johnson was also admitted into evidence in which Johnson explained that, if ever she was killed, Wheeler should be investigated.

The evidence was sufficient to enable a rational trier of fact to find Wheeler guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] On March 20, 2007, Wheeler was indicted for malice murder, felony murder (aggravated assault), and aggravated assault. Following a September 17-19, 2007 jury trial, Wheeler was found guilty on all counts. On September 19, 2007, Wheeler was sentenced to life imprisonment for malice murder. The felony murder conviction was vacated by operation of law (*Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993)), and the aggravated assault count was merged with the malice murder count for sentencing purposes. Wheeler filed a motion for new trial on September 3, 2009, which he amended on September 9, 2009, October 1, 2009, and June 4, 2010. The motion was denied on May 13, 2011. Wheeler's timely appeal was docketed in this Court for the September 2011 term and was orally argued on November 7, 2011.

2. Wheeler contends that the trial court erred in admitting similar transaction evidence from his ex-wife and his ex-girlfriends. He does not contend that the evidence was admitted for an improper purpose, but only that, because the incidents involving his ex-wife and his ex-girlfriends had occurred between 18 and 30 years prior to the murder, too much time had passed for the evidence to be admissible at trial. However, "[t]he lapse of time [between the similar transactions and the crime at issue] generally goes to the weight and credibility of the evidence, not to its admissibility." (Citations and punctuation omitted.) *Rogers v. State*, 290 Ga. 401, 407 (3) (721 SE2d 869) (2012). See also *Gilham v. State*, 232 Ga. App. 237, 239 (1) (501 SE2d 586) (1998) ("Lapse of time does not render the [similar transaction] evidence automatically inadmissible . . . but is a factor to be taken into consideration when balancing the probative value of the evidence against its potentially prejudicial impact") (citation and punctuation omitted). Here, "[b]oth the prior transactions and the murder [at issue] involved violent assaults by [Wheeler] against women with whom he was intimately involved." *Neal v. State*, 290 Ga. 563, 564 (2) (722 SE2d 765) (2012). Indeed, the evidence established Wheeler's pattern of choking his lovers, beating them, and threatening them with a knife.

> Given that the similar transaction evidence reflects [Wheeler's] behavior towards [his] prior spouse[ ] [and ex-girlfriends], we conclude that any prejudice from the age of these prior incidents was outweighed by the probative value of the evidence under the particular facts of this case and the purpose for which the similar transactions were offered.

(Citations and punctuation omitted.) Id. at 565.

"Because the evidence was sufficient to establish the required similarity between the charged crime and the assaults [Wheeler] inflicted on his ex-wife [and ex-girlfriends], the trial court did not abuse its discretion by admitting this evidence." (Citation and punctuation omitted.) *Neal*, supra at 565. See also *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009) (There is no "bright-line rule that similar transactions more than 30 years old are automatically inadmissible.").

3. Wheeler argues that the trial court erred by denying his motion to strike Jurors Pearson and Carroll for cause. Juror Pearson testified that, although she had attended church with Johnson several years before the murder, she only knew Johnson as an acquaintance. Juror Pearson also testified that she was married to a

police officer who had done some work on Wheeler's case,[2] but that she had never spoken with her husband about Wheeler's case and that she would not allow her relationship with the officer to influence her judgment with respect to "work-related" matters such as Wheeler's case. With respect to Juror Carroll, she also knew Johnson as an acquaintance, and when initially asked whether she thought that she could be fair and impartial in the case, she responded "I think so." Then, when asked directly about whether she could base her verdict solely on the evidence presented at trial, she indicated that she could.

Because there was

> [n]othing in the juror[s'] responses [that would] compel[ ] a finding that [they] had formed an opinion of [Wheeler's] guilt or innocence that was so fixed and definite that [they] would be unable to set the opinion aside, or that [they] would be unable to decide the case based upon the court's charge and upon the evidence[,] . . . [i]t was not an abuse of discretion [for the trial court] to refuse to excuse the juror[s].

(Citation omitted.) *Corza v. State*, 273 Ga. 164, 167 (3) (539 SE2d 149) (2000). See also *McClain v. State*, 267 Ga. 378 (1) (477 SE2d 814) (1996).

4. Wheeler claims that the trial court erred in admitting into evidence a letter purportedly written by Johnson in which she stated that Wheeler had threatened her life and that Wheeler should be investigated if ever she were found dead. Specifically, Wheeler contends that the letter could not be properly admitted into evidence because the handwriting expert who authenticated the letter could not show that a proper chain of custody had been established with respect to the document. Wheeler is incorrect. Because the letter constituted non-fungible physical evidence that could be recognized by observation, there was no need for the State to prove chain of custody with respect to it. *Mize v. State*, 269 Ga. 646, 651 (5) (501 SE2d 219) (1998) ("There is no need to prove chain of custody for non-fungible physical evidence identified by a witness, since these items can be recognized by observation.") (citations omitted).

5. In two enumerations, Wheeler asserts that he is entitled to relief in the form of a new trial or having his conviction overturned because "newly discovered evidence" establishes that he was not involved in Johnson's murder. The alleged "newly discovered evi-

---

[2] We note that this police officer was not a testifying witness.

dence" cited by Wheeler consists of his post-trial expert asserting that it was more likely that the DNA samples collected from Johnson's home were a mix of Wheeler's DNA from "touching" Johnson's doorknob and DNA from Johnson bleeding, rather than a mix of DNA from Johnson and Wheeler "bleeding at the same time" as the State had theorized at trial. Contrary to Wheeler's assertions, this was not "newly discovered evidence" that would justify the grant of a new trial at all, but merely a new expert asserting an alternative theory about the case based on the same DNA evidence that had always been available to Wheeler for his review. As such, he has presented nothing here that would serve as a basis for providing him relief based on a theory of newly discovered evidence. See, e.g., *Timberlake v. State*, 246 Ga. 488 (1) (271 SE2d 792) (1980).

6. Finally, Wheeler contends that his trial counsel was ineffective because (a) he did not obtain an independent DNA analysis to challenge the State's findings, and he failed to challenge the State's findings through cross-examination; (b) he operated under a conflict of interest; (c) he failed to object and move for a mistrial during closing arguments; and (d) he failed to object to certain testimony.

In order to succeed on his claim of ineffective assistance, Wheeler must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Wheeler's attorney testified at the motion for new trial hearing that, instead of seeking an independent analysis of the DNA evidence, he chose to challenge the State's version of events by (1) showing that another person had admitted to Johnson's murder, and (2) explaining that Wheeler was a frequent visitor of Johnson's who left evidence of his DNA at her home days prior to her murder. This strategy was reasonable, and it is not rendered unreasonable just because another attorney may have approached the case under a different theory that would have required an independent DNA analysis. See *Reed v. State*, 285 Ga. 64 (6) (673 SE2d 246) (2009).

(b) Wheeler claims that trial counsel operated under a conflict of interest because, in a prior, unrelated criminal case, counsel had represented Eddie Elmas, a man who had been a suspect in

Johnson's murder and who ended up testifying as a State's witness at trial. However, the record belies any assertion that Wheeler's counsel had any divided loyalties between Wheeler and Elmas, or that Wheeler's counsel represented Elmas in any way during Wheeler's trial. In fact, Wheeler's counsel actually targeted Elmas as one of the people other than Wheeler who had actually committed Johnson's murder. We find no merit to Wheeler's contention of ineffective assistance. See generally *Whatley v. Terry*, 284 Ga. 555 (IV), (V) (668 SE2d 651) (2008).

(c) The record reveals that, during the State's closing argument, the prosecutor referred to Wheeler as "one of the meanest SOBs in Grady County," at which point Wheeler stood up twice and started making obscene hand gestures at the prosecutor. Wheeler contends that his counsel's failure to object to the prosecutor's remarks and move for a mistrial constituted ineffective assistance. However, before the State made its comment during its closing argument, Wheeler's counsel had already made the reasonable strategic decision to say in his own closing argument that "it was all right if [the jury] believed Mr. Wheeler was the meanest SOB in Grady County, [because] that [still] didn't make him guilty of this crime." This was a reasonable strategy to employ in an effort to minimize the potential effect of the similar transaction evidence that had been admitted at trial, and counsel's decision not to object to the State's further comment on Wheeler as a "mean[ ] SOB" was therefore reasonable as well. See *Braithwaite v. State*, 275 Ga. 884 (2) (b) (572 SE2d 612) (2002) (no ineffective assistance where attorney made reasonable strategic decision not to object to improper closing argument). The fact that Wheeler made obscene hand gestures during the State's closing argument that the State cited as further proof that Wheeler was a "mean[ ] SOB" did not make his counsel's decision to decline to object and move for a mistrial any less reasonable.

(d) Wheeler asserts that trial counsel was ineffective for failing to object to testimony from a GBI Agent regarding his observations of the crime scene and the manner in which Wheeler was developed as a suspect in light of the results of DNA tests that had come back from the crime lab. Specifically, Wheeler contends that his counsel should not have allowed the Agent to give improper "expert" testimony on the scientific theories (1) that "commingled" blood between Wheeler and the victim at the crime scene indicated that Wheeler and Johnson were bleeding at the same time during their alleged confrontation; and (2) the fact that no blood evidence was found on Wheeler's knife could have resulted from the blood evidence having degraded over time from exposure to water or other conditions. However, Wheeler's counsel made a strategic decision not to object to the Agent's testimony because (1) he did not want to

potentially confuse the jury by drawing more attention to the idea of "commingled" blood being at the crime scene; and (2) he did not need to reemphasize the fact that no blood was found on the knife that was allegedly used in the crime because that fact had already been established at trial, and, in any event, it was consistent with his theory that someone other than Wheeler killed Johnson. This strategy was reasonable. See Division 6 (a), supra. Again, counsel's reasonable strategy is not somehow rendered unreasonable just because another attorney may have approached the case differently. See *Reed*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 23, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012.

*John G. Edwards*, for appellant.

*Joseph K. Mulholland, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.