307 Ga. 689
FINAL COPY

S19A1250.  WILLIAMS v. THE STATE.

BETHEL, Justice.

Following his conviction for the murder of Barry Bullard, Allen

Deverna Williams appeals, pro se, from the denial of his motion for

a new trial.[1]  Williams argues numerous errors, including: (1) that

---

[1]  The crimes occurred on July 30, 2008.  On September 8, 2008, a Tift County grand jury jointly indicted Williams and two other individuals, Jeremy Reynolds and Neddrick Green, as parties to the crime for malice murder. Green and Reynolds were tried together and found guilty.  We affirmed Green's conviction in *Green v. State*, 302 Ga. 816 (809 SE2d 738) (2018).  Williams was tried separately by a jury in February 2011 and found guilty of malice murder. On February 18, 2011, Williams filed pro se motions for new trial, for production of transcripts, for appointment of appellate counsel, and for extension of time to amend or supplement his motion for new trial.  Trial counsel also filed a timely motion for new trial on February 24, 2011.  Williams was represented by new appellate counsel during the course of the post-trial proceedings, including hearings in November 2015, July 2017, and May 2018. The trial court denied the motion for new trial on May 25, 2018.  Appellate counsel filed a timely notice of appeal on June 20, 2018.  Williams then filed a pro se motion on July 2, 2018, asking to represent himself on appeal.  Pursuant to a hearing on November 8, 2018, the trial court granted Williams' motion. However, the trial court did not have jurisdiction to permit appellate counsel to withdraw because the case had already been docketed in this Court.  See *Williams v. State*, Case No. S19A0667, dismissed March 4, 2019.  We struck the case from our docket and remanded the case to the trial court with direction that the court promptly enter a ruling on the request for self-representation and address Williams' access to the record.  Following a hearing, the trial court entered an order granting Williams' motion for self-representation on May 1,

the evidence was insufficient to sustain his convictions; (2) that he received ineffective assistance from post-trial counsel; (3) that the trial court ruled on his motion for a new trial without being prompted to do so; and (4) that several errors arose from an alleged "conflict of interest" involving Williams' former counsel. Finding no error, we affirm.[2]

Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. On July 30, 2008, Williams was driving through a neighborhood in Tifton. Two friends of his, Neddrick Green and Jeremy Reynolds, were also in the car. Ernest Jackson was standing in a nearby yard when he saw Williams and his friends drive through the area. Jackson recognized the men and noticed Williams glaring, so Jackson went to alert Barry Bullard in a nearby apartment. Williams, Bullard, and the others had been

---

2019. The trial court also ensured that Williams was provided with a complete copy of the record. This case was re-docketed in this Court to the August 2019 term and was submitted for a decision on the briefs.

[2] Williams appears to raise additional claims of error in his reply brief, but "[a]n appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *City of Atlanta v. Mays*, 301 Ga. 367, 372 (3) (801 SE2d 1) (2017).

friends, but a dispute between Bullard and Williams had recently arisen that soured the relationship.

Bullard made his way to the area where Jackson had seen Williams driving by. Williams backed into a parking space across the street from where Bullard and Jackson were standing. While the car was parked, Green got out of the vehicle, retrieved a long gun from the back seat, and got back into the car. Michael Taylor, who had been standing with Bullard and Jackson, saw Green retrieve the weapon and ran to hide behind the nearby apartments. Williams' vehicle then sped toward where Bullard and Jackson were standing, stopped, and Williams and his friends exited the vehicle.

Bullard then repeatedly told Williams and Williams' friends, "I ain't got no beef with y'all." The men argued and Williams yelled, "Yeah, n****r, I'm ready to die, I've been snorting all night." Williams and Green both had guns drawn when Green punched Bullard in the face. As Williams and Green turned back toward the car, Reynolds walked up to Bullard and shot him in the face. Jackson ran away as Bullard fell to the ground.

Williams, Green, and Reynolds all tried to flee the scene in Williams' vehicle, but Williams crashed into a mailbox and trashcan. Bullard then got to his feet and shot in the direction of Williams and the incapacitated vehicle. Williams suffered a gunshot wound to the leg, but ran from the scene with Reynolds, who said, "I think I got him." Bullard ultimately died as a result of his gunshot wound. A note passed in jail from Williams to Reynolds instructing Reynolds how to testify in Williams' case was later intercepted.

1. Williams argues that the evidence was insufficient for a rational jury to find him guilty beyond a reasonable doubt because the evidence showed that Bullard was fatally shot by Reynolds, and that the trial court therefore should have overturned the verdict on the general grounds under a "thirteenth juror" standard. We hold that the evidence was sufficient to support the verdict, and that Williams' argument with respect to the "thirteenth juror" standard lacks merit.

(a) As an initial matter, we disagree with Williams' contention that the evidence was insufficient because Reynolds fatally shot

4

Bullard. OCGA § 16-2-20 (a) provides that anyone "concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." A person is "concerned in the commission of a crime" if that person, among other things, "[i]ntentionally aids or abets" the commission of the crime or "[i]ntentionally advises, encourages, hires, counsels, or procures" another individual to commit the crime. OCGA § 16-2-20 (b) (3), (4). To be convicted, a person need not necessarily be the one directly committing the crime. See *Cisneros v. State*, 299 Ga. 841, 846-848 (2) (792 SE2d 326) (2016). And although mere presence at the crime scene is insufficient to convict someone of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of a crime. See *Williams v. State*, 304 Ga. 658, 661 (1) (821 SE2d 351) (2018); *Powell v. State*, 291 Ga. 743, 744-745 (1) (733 SE2d 294) (2012).

Williams was charged as a party to the crime. He was driving the vehicle with the other perpetrators and got out, armed, and confronted Bullard, stating "Yeah, n****r, I'm ready to die, I've been

5

snorting all night." Reynolds then walked up to Bullard and shot him. Williams drove the car away from the scene with the others and then ran away with Reynolds after crashing the car. This evidence was sufficient to enable a rational trier of fact to find Williams guilty beyond a reasonable doubt as a party to malice murder. See *Green v. State*, 302 Ga. 816, 817 (1) (809 SE2d 738) (2018) (evidence sufficient under similar facts to affirm conviction of Williams' co-defendant who also did not shoot Bullard). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

(b) To the extent Williams argues that the trial court failed to correctly apply the "thirteenth juror" standard, this argument also lacks merit. When a defendant challenges his conviction on the general grounds, OCGA §§ 5-5-20 and 5-5-21, and contends the verdict was contrary to the evidence or lacked evidence to support

6

it, a trial court has broad discretion to sit as the "thirteenth juror" and consider certain matters beyond the sufficiency of the evidence. See *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015). These additional matters include conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. See id.

As relevant here, the court's order denying the motion said that it considered the credibility of the witnesses in addition to the weight of the evidence presented at trial and concluded, in denying the motion for new trial on the general grounds, that the evidence was sufficient to find Williams guilty beyond a reasonable doubt. The court therefore ruled on the motion based on its own independent review of the trial record and found no discrepancy between the jury's conclusions regarding the weight of the evidence and the credibility of the witnesses and the court's own views of those matters. "This is not a case where the trial court explicitly declined to consider the credibility of the witnesses in denying the defendant's motion for new trial or made clear its belief that it had no discretion to grant a new trial despite disagreeing with the jury's

7

verdict." (Citation and punctuation omitted.) *Burney v. State*, 299 Ga. 813, 816 (1) (c) (792 SE2d 354) (2016). Accordingly, this enumeration of error lacks merit.

(c) To the extent Williams argues that the trial court erred in its capacity as the "thirteenth juror" by denying him a new trial under OCGA § 5-5-21, this argument also fails. Whether to grant a new trial under OCGA § 5-5-21 is committed solely to the discretion of the trial court, and when an appellant asks this Court to review a trial court's denial of a new trial on this ground, we review the case under the standard set forth in *Jackson v. Virginia*, supra. See *Dent v. State*, 303 Ga. 110, 114 (2) (810 SE2d 527) (2018). And as explained above, the evidence presented at trial was sufficient to authorize a rational jury to find Williams guilty beyond a reasonable doubt of the crime of which he was convicted. Accordingly, this enumeration of error lacks merit.

2. Williams argues next that his post-trial counsel provided ineffective assistance because she did not file an amended motion for new trial explicitly adopting the grounds for appeal that were

8

raised in the motion for new trial filed by trial counsel or independently raise any additional claims, thus resulting in "abandonment" of unspecified claims. We disagree.

> Generally, when a preserved[3] ineffective assistance of counsel claim is raised for the first time on appeal, we must remand for an evidentiary hearing on the issue. But remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland* [*v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)].

(Citation and punctuation omitted.) *Anthony v. State*, 302 Ga. 546, 554 (V) (807 SE2d 891) (2017). To prevail on a claim of ineffective assistance under *Strickland*, Williams must demonstrate that: (1) counsel's performance was professionally deficient; and (2) counsel's deficient performance prejudiced him. See *Strickland*, 466 U. S. at 687 (III).

Williams has failed to meet this high burden because he does

---

[3] "To preserve the issue of ineffective assistance of post-trial counsel, [Williams] had to raise the issue at the earliest practicable opportunity of post-conviction review or the issue is waived." (Citation and punctuation omitted.) *Anthony v. State*, 302 Ga. 546, 554 (V) (807 SE2d 891) (2017). Williams has met that standard because this appeal is his first opportunity to raise the issue, given the procedural posture of the case.

not specifically identify what additional claims his post-trial counsel should have argued and how those claims would have been meritorious. Further, the claims raised in the motion for a new trial were still before the trial court despite not being raised for a second time in an amended motion, and the trial court ruled on each of those claims. Because Williams has failed to show any way in which his post-trial counsel was deficient, this claim of ineffective assistance fails.

3. Williams next argues that the trial court ruled on his motion for a new trial without being prompted to do so by either party, which denied him his "Sixth Amendment right to appeal" because he was prevented from filing further pleadings in support of his motion. This argument lacks merit.

The trial court entered a ruling on Williams' motion for new trial after conducting three hearings and after post-trial counsel for Williams announced that she had no further arguments. Here, the trial court retained the power to review Williams' motion for new trial, and Williams could amend that motion up until it was ruled

upon. See OCGA §§ 5-5-1 (a), 5-5-40 (b). Williams has pointed us to no authority providing that a trial court cannot rule on a pending motion until requested by a party, and the cases he cites do not stand for that proposition. His argument therefore fails.

4. Lastly, Williams makes several arguments pertaining to an alleged conflict of interest involving his former defense counsel, Tim Hoffman. Each of these arguments fail.

Prior to Williams' trial, Williams' trial counsel argued that a conflict existed with respect to one of the State's witnesses, Robert Brown. Brown had been represented in a prior, unrelated case by Hoffman, who also worked in the office of Williams' public defender. Hoffman had briefly represented Williams in the beginning of Williams' murder case and had reviewed discovery, interviewed the medical examiner, and spoken with Williams and his family. However, the case was reassigned to another attorney in the public defender's office, who continued representing Williams through his trial.

Brown was called to testify in the case against Williams

11

regarding an incident in the Tift County jail in which Williams gave Brown a note to pass to Reynolds, which instructed Reynolds how to testify in Williams' murder case.

Williams' trial counsel was addressing the issue with the court immediately prior to trial, and with Williams present, when Hoffman suggested a confidential meeting between himself and the trial judge to explain his position and to address any confidential information that would be protected by attorney-client privilege. The court agreed and met with Hoffman and a court reporter in chambers. The trial court ultimately decided there was no conflict because Brown's prior case was closed and Brown's testimony in Williams' case was limited to his passing of the note. The trial court instructed Hoffman to make himself "scarce" during Williams' trial. Williams' trial counsel objected that there was a conflict, but did not object to the in-chambers discussion held with Hoffman by the court.

(a) Williams argues that the trial court erred in declining to find a conflict of interest with respect to Hoffman, that the trial court erred when it instructed Hoffman to make himself scarce, and that

12

this violated his right to counsel and denied him an effective cross-examination of Brown. We disagree with Williams and hold that an impermissible conflict did not exist under the facts of this case.

In order for Williams to prevail on his claim that his attorney was operating under a conflict of interest that violated his right to counsel, he must show more than a mere possibility of conflict. That is, Williams must show "an actual conflict of interest that adversely affected his attorney's performance." *Turner v. State*, 273 Ga. 340, 342 (2) (a) (541 SE2d 641) (2001).

"Where, as here, the alleged conflict of interest is based upon defense counsel's prior representation of a prosecution witness, we must examine the particular circumstances of the representations to determine whether counsel's undivided loyalties remain with the current client, as they must." (Citation and punctuation omitted.) *Turner*, 273 Ga. at 342 (2) (a).

> In this regard, we believe that the factors that arguably may interfere with effective cross-examination . . . include: (1) concern that the lawyer's pecuniary interest in possible future business may cause him or her to avoid vigorous cross-examination which might be embarrassing

13

> or offensive to the witness; and (2) the possibility that privileged information obtained from the witness in the earlier representation might be relevant to cross-examination. Another factor that should be considered . . . is whether the subject matter of the first representation is substantially related to that of the second.

(Citations and punctuation omitted.) *Hill v. State*, 269 Ga. 23, 24 (2) (494 SE2d 661) (1998).

Here, there is no evidence that the first factor applies because Williams' lawyers were public defenders, and there is no suggestion of any pecuniary interest being at stake. As to the second and third factors, Hoffman previously represented Brown on charges unrelated[4] to Bullard's murder and the later jailhouse note, and those charges against Brown had already been resolved, so there was no simultaneous representation of Williams and Brown. Nor does the record indicate that trial counsel's performance was affected in any way. Compare *Wheeler v. State*, 290 Ga. 817, 820-821 (6) (b) (725 SE2d 580) (2012) (record belied assertion of conflict

---

[4] Hoffman represented Brown on two cases — one charging him with theft by taking, and another charging him with possession of cocaine, driving on a suspended license, and failure to maintain his lane.

14

of interest where defense counsel previously represented a state's witness in a prior, unrelated criminal case), with *Mitchell v. State*, 261 Ga. 347, 348-349 (2) (405 SE2d 38) (1991) (conflict of interest arising from defense counsel's simultaneous representation of defendant and state's witness continued even after defense counsel was relieved of his representation of the state's witness). We find no error here.

(b) Finally, Williams argues that the trial court erred when it excluded him from "extensive, critical discussions outside the jury's presence." More specifically, Williams complains that he had a right to be present in chambers when Hoffman was discussing potentially privileged information pertaining to his prior representation of Brown. We disagree that Williams was entitled to be present in chambers for these discussions, and further hold that Williams waived his objection.

> Embodied within the constitutional right to the courts, see Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983, is a criminal defendant's right to be present and see and hear, all the proceedings . . . against him on the trial before the Court. This is a fundamental

15

right and a foundational aspect of due process law. (Citations and punctuation omitted.) *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011). This right has been interpreted to attach "at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." (Citation and punctuation omitted.) *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). "This Court has determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." (Citation and punctuation omitted.) Id.

Even assuming, dubiously, that Williams had a right to be present at these discussions of a witness's attorney-client privileged information, "in failing to voice any objection during the trial proceedings to [his] absence" at the conference in chambers, Williams "clearly acquiesced in [his] trial counsel's waiver of [his] right to be present" at that conference. See *Williams v. State*, 300

Ga. 161, 166 (3) (794 SE2d 127) (2016) (concluding that defendant acquiesced to trial counsel's waiver of her right to be present at a bench conference where defendant remained silent after being informed that conference had occurred in her absence and of the nature of the discussions); *Murphy v. State*, 299 Ga. 238, 241 (2) (787 SE2d 721) (2016) ("Acquiescence may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence."). Thus, this contention is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 27, 2020.
Murder. Tift Superior Court. Before Judge Cross.
Allen D. Williams, *pro se*.

17

*C. Paul Bowden, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.