**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2022**

# In the Court of Appeals of Georgia

A22A0173. DUNBAR v. THE STATE.

PHIPPS, Senior Appellate Judge.

After a jury trial, Larry J. Dunbar was convicted of rape, aggravated sodomy, battery, false imprisonment, and two counts of aggravated assault. He appeals, arguing that the evidence was insufficient to support his convictions and that he received ineffective assistance of trial counsel in several respects. For the reasons that follow, we affirm in part and remand the case to the trial court to consider Dunbar's claim of ineffective assistance of trial counsel.

1. *Sufficiency of the evidence.*

The standard of review regarding the sufficiency of the evidence is well settled:

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. Thus, in evaluating the sufficiency of the evidence,

we do not assess witness credibility or weigh the evidence, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. And the verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

*Davis v. State*, 353 Ga. App. 651, 653 (1) (839 SE2d 184) (2020) (citation and punctuation omitted).

So viewed, the evidence shows that the victim was engaged to Dunbar, but broke up with him in the summer of 2014 because she found out that he was still married. In September 2014, the victim agreed to meet Dunbar at an extended-stay hotel to discuss their relationship. After the victim talked to Dunbar, she became tired and fell asleep. When the victim woke up, she found Dunbar in the bathroom going through her pocketbook and holding her phone. Dunbar was angry because he believed that the victim's ex-boyfriend was trying to call her.

Dunbar then punched the victim in the face several times. At one point, the victim fell back and hit her head, and Dunbar pulled her up and started hitting her again. Dunbar also picked up a pair of scissors and threatened to cut off the victim's hair.

The victim ran out of the hotel room and into the hallway, but Dunbar followed her, put his hands around her neck, and pushed her against a wall. At the time, Dunbar also had a knife in his hands, but he dropped it. Dunbar eventually led the victim back into the hotel room with his arm around her neck. He briefly left the hotel room to retrieve the knife and then returned to the room.

At one point, Dunbar threatened the victim with the knife by holding it to her neck. He similarly held the scissors to her neck at some point. While holding either the knife or the scissors, Dunbar demanded that the victim take off her clothes. She did not want to remove her clothing, but did so because Dunbar threatened to cut her clothes off. Dunbar then instructed the victim to get on one of the beds, and he forcibly engaged in intercourse with her against her will. The victim told Dunbar to stop and tried to physically resist, but was unsuccessful. Dunbar thereafter ordered her to get on her knees and perform oral sex on him, also against her will. The victim complied because she was afraid that Dunbar would hurt her. Dunbar held either the knife or the scissors during the sexual acts. During this time, the victim did not believe she could leave the hotel room; when Dunbar was not physically touching her, he was standing by the door so she could not get out.

Eventually, Dunbar told the victim that she could leave. The victim left the hotel, got into her car, drove to the front of the hotel, and honked the horn until a hotel employee called 911. A responding officer testified that, when he arrived, the victim was "visibly shaken" and crying. He also observed injuries to the victim's face and neck.

The victim was examined by a sexual assault nurse examiner ("SANE"). Before the examination, the victim told the SANE what had happened and complained of head and neck pain. The SANE documented the following injuries to the victim: (1) a lump on the back of her head; (2) tenderness of her neck; (3) bruises around her chin, cheek, and knees; (4) abrasions on her cheek and hand; (5) two black eyes; (6) an abrasion or laceration on her neck; (7) bruising inside her mouth; and (8) an internal vaginal abrasion consistent with forced penetration. The SANE swabbed all of the victim's abrasions, her vagina, and the inside of her mouth. Testing by the Georgia Bureau of Investigation revealed that the victim's vaginal and oral swabs contained Dunbar's DNA.

In November 2014, a Douglas County grand jury indicted Dunbar for rape, aggravated sodomy, battery, false imprisonment, and two counts of aggravated assault. Count 1 of the indictment charged Dunbar with aggravated assault by making

4

"an assault upon [the victim] with scissors, an object which when used offensively against a person is likely to result in serious bodily injury[.]" Count 2 charged him with aggravated assault by making "an assault against [the victim] with a knife, an object which when used offensively against a person is likely to result in serious bodily injury[.]" In Count 3, Dunbar was charged with rape for having "carnal knowledge of [the victim], a female, forcibly and against her will[.]" Count 4 charged Dunbar with aggravated sodomy for "commit[ing] an act of sodomy with [the victim] by putting his penis in her mouth with force and against her will[.]" In Count 5, Dunbar was charged with battery for "intentionally caus[ing] visible bodily harm to [the victim] by striking her in the face resulting in bruising and swelling[.]" And Count 6 charged Dunbar with false imprisonment, alleging that "in violation of the personal liberty of [the victim], [he] did unlawfully confine her without legal authority[.]" After a jury trial, Dunbar was convicted of all counts. This appeal followed.

Dunbar asserts that the evidence does not support his convictions, but he offers no meaningful argument as to why the evidence was insufficient. We find that the evidence presented at trial and outlined above was sufficient for a rational trier of fact to find that Dunbar was guilty of the crimes of which he was accused. See OCGA §§

5

16-5-21 (b) (2)[1] ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."); 16-5-23.1 (a) ("A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another."); 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."); 16-6-1 (a) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will. . . . Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."); 16-6-2 (a) (1), (2) (A person commits the offense of aggravated sodomy when he or she "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another" "with force and against the will of the other person[.]"). It was for the jury to determine the credibility of witnesses and resolve any conflicts or inconsistencies in the evidence. See *Davis*,

---

[1] All statutes cited in this opinion are the versions in effect in 2014. "It has long been the law in this State that, in general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission." *Widner v. State*, 280 Ga. 675, 677 (2) (631 SE2d 675) (2006) (citation and punctuation omitted). Here, Dunbar committed his offenses in September 2014.

353 Ga. App. at 653 (1). Accordingly, this claim of error presents no basis for reversal.

2. *Ineffective assistance of trial counsel.*

Dunbar contends for the first time on appeal that his trial counsel rendered ineffective assistance in several respects. He argues, among other things, that his trial counsel failed to adequately prepare for trial, demonstrated a lack of understanding of jury selection, failed to make an opening statement, and failed to adequately discuss with Dunbar his right to testify or remain silent. The State acknowledges that the trial court has not had an opportunity to consider Dunbar's ineffective assistance claim.

Generally, an ineffectiveness claim must be raised "at the earliest practicable moment[,]" meaning that the "claim [must] be raised *before appeal* if the opportunity to do so is available[.]" *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (citation and punctuation omitted; emphasis in original). In this case, even though Dunbar raised his ineffectiveness claim for the first time on appeal, he raised this issue "at the first practicable opportunity" because trial counsel represented Dunbar until after the notice of appeal was filed. *Bridges v. State*, 279 Ga. 351, 357 (11) (613 SE2d 621) (2005) (explaining that even though an ineffectiveness claim was raised

7

for the first time on appeal, it was timely raised because the defendant was represented by trial counsel until after the notice of appeal was filed). "Generally, when a preserved ineffective assistance of counsel claim is raised for the first time on appeal, [an appellate court] must remand for an evidentiary hearing on the issue." *Williams v. State*, 307 Ga. 689, 692 (2) (838 SE2d 314) (2020) (citation, footnote, and punctuation omitted). Although "remand is not mandated if [the appellate court] can determine from the record that the defendant cannot establish ineffective assistance of counsel[,]" id. (citation and punctuation omitted), it does not appear that Dunbar's ineffective assistance claim can be resolved on the existing record. Because this claim has not been presented to the trial court, "we find that the issue of ineffective assistance of counsel must be remanded to the trial court for a hearing and a ruling." *Bridges*, 279 Ga. at 357 (11); see *Shipman v. State*, 288 Ga. App. 134, 136-137 (4) (653 SE2d 383) (2007).

*Judgment affirmed in part and case remanded with direction. Doyle, P. J., and Reese, J., concur*.