## A10A0305. HENDERSON v. THE STATE.
### (694 SE2d 185)

MIKELL, Judge.

After a jury trial, Cecil Henderson was convicted of aggravated sexual battery (Count 12), four counts of sexual battery (Counts 3, 6, 9, 15), five counts of enticing a child for indecent purposes (Counts 1, 4, 7, 10, 13), and five counts of child molestation (Counts 2, 5, 8, 11, 14). Henderson was sentenced to a total of 25 years.[1] On appeal, Henderson argues that his trial counsel was ineffective and that the trial court erred in denying his motion for directed verdict of acquittal and in admitting similar transaction evidence. Because we reverse Henderson's convictions for enticing a child for indecent purposes, we affirm in part and reverse in part.

"On appeals from criminal convictions, the appellate court views the evidence in the light most favorable to the verdict. We no longer presume the defendant is innocent, nor do we weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions."[2] So viewed, the record shows that 11-year-old S. H. testified that her grandfather, the appellant, molested her several times. S. H. testified that on the first occasion, she was leaving her grandparents' home. Henderson asked her to touch her private area and placed his finger inside her underwear. On a different occasion when she was spending the night at her grandparents' home, Henderson inserted his finger into her vagina and moved it up and down and made her touch his penis. The last incident involved Henderson touching her bottom while they were in bed, and she cried and pretended that she was ill so that he would stop. S. H. recalled that on that occasion, Henderson took her back to

---

[1] Henderson's sentence included 20 years to serve on Counts 2, 5, 8, 11, 12, and 14, to run concurrently; 5 years to serve on Counts 3, 6, and 9, to run consecutive to the sentence imposed on Count 2; 20 years probation on Counts 1, 4, 7, 10, and 13, to run concurrent with Count 2; and 5 years probation on Count 15, to run consecutive to Count 2.

[2] (Citations omitted.) *Foster v. State*, 300 Ga. App. 446, 447 (1) (685 SE2d 422) (2009).

her own home during the night because she said she was sick. S. H. also testified that she talked with her little brother, M. H., about their grandfather and learned that Henderson was also touching him. When asked why she did not tell her parents about the incidents, S. H. testified that she was afraid of Henderson and that she did not think her parents would believe her.

Eight-year-old M. H. testified that Henderson had touched his private part, but he did not remember how many times it had happened nor had he talked to anyone about it other than S. H. before the investigation began. Brett Henderson, M. H. and S. H.'s father, testified that his family spent quite a bit of time with his parents, as they often picked the children up from school, and that the children regularly spent nights with them. He recalled that on one occasion when his mother was out of town, the children went to spend the night with Henderson, who brought them home in the middle of the night.

On the day that Brett learned of the molestation, his older daughter, Jessica, called him at work and told him that S. H. and M. H. had gone down to the pond behind their house and would not come back. Brett told Jessica to call Henderson and to ask him to come over to get M. H. and S. H. away from the pond. When Brett arrived home, Jessica told him that M. H. and S. H. told her that they did not want to go with Henderson because he had hurt them. Brett asked the children if Henderson had ever touched their private parts, and they replied that he had. Brett testified that he told his wife about the abuse and confronted his father before going to the police to report the molestation.

1. In a one-paragraph argument that his trial counsel was ineffective, Henderson lists several things that his trial counsel failed to do. Specifically, Henderson maintains that trial counsel did not present an adequate defense or consult with him about witnesses who were subpoenaed but did not testify. Additionally, trial counsel did not explain to him the law about character witnesses, adequately investigate a similar transaction witness, or explore fully during trial the motives of adults who coach children to lie.

Henderson does not support his argument with citation to the record nor does he provide citation of authority to support each alleged instance of ineffectiveness.

To establish ineffective assistance of counsel under *Strickland v. Washington*[3] a defendant must demonstrate (1) that his trial counsel's performance was deficient, *and* (2) that

---

[3] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. To make that showing, [Henderson] must rebut the strong presumption that his lawyer's conduct falls within the wide range of reasonable professional assistance. As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous.[4]

Despite Henderson's list of alleged deficiencies in his trial counsel's performance, Henderson has not demonstrated that he was prejudiced. As stated above, "[i]t is well settled that in order to prove the defense has been prejudiced, defendant must show there is a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional deficiencies."[5] As Henderson has not made this requisite showing, we affirm the trial court's denial of his motion for new trial.

2. In his next enumeration of error, Henderson argues that the trial court erred when it denied his motion for directed verdict of acquittal as to Counts 1, 4, 7, 10, and 13, all of which charged Henderson with enticing a child for indecent purposes by unlawfully soliciting, enticing, and taking the children to his home for the purpose of child molestation and indecent acts. Henderson contends that these convictions cannot stand because the children came to his home regularly and voluntarily and with their parents' consent. For the reasons that follow, we reverse these convictions.

Pursuant to OCGA § 16-6-5 (a) "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." The statute has been held to include the element of "asportation,"[6] and our Supreme Court has held that this element "is satisfied whether the 'taking' involves physical force, enticement, or persuasion."[7] "[A]ny asportation, however slight, is sufficient to show the

---

[4] (Punctuation and footnotes omitted; emphasis supplied.) *Bazin v. State*, 299 Ga. App. 875, 876-877 (683 SE2d 917) (2009).

[5] (Citation and punctuation omitted.) *Nelson v. State*, 255 Ga. App. 315, 322-323 (10) (565 SE2d 551) (2002).

[6] *Cimildoro v. State*, 259 Ga. 788, 789 (1) (387 SE2d 335) (1990).

[7] Id.

taking element of enticing a child for indecent purposes."[8] But there is no evidence of a taking or asportation in the instant case. The videotaped statement of M. H., the victim in Counts 1, 4, and 7 of the indictment, was played for the jury. M. H. stated that he was touched by Henderson on two separate occasions in Henderson's bedroom and once in the bathroom, and in these instances, Henderson closed the doors to the rooms. S. H. testified that the incidents occurred while she was in her grandmother's bed and was joined by Henderson, or when she was in other areas of the house. However, there was no evidence that he enticed, persuaded, or lured the children into any area of the house. "[I]n the absence of sufficient probative evidence that appellant himself enticed the victims onto the premises with the present intention to commit acts of indecency or child molestation after they had been enticed there, his convictions for violating OCGA § 16-6-5 cannot stand."[9] Accordingly, we reverse Henderson's convictions of enticing a child for indecent purposes and vacate the sentences imposed thereon.[10]

3. In his last enumerated error, Henderson argues that the trial court erroneously admitted similar transaction evidence from Cheryl Turner and Randi Leigh Henderson. Specifically, Henderson contends that Turner's testimony was too remote and that Randi Leigh impeached herself when she admitted that she has told lies during most of her life. We find no error.

> The decision of a trial court to admit evidence of similar transactions will be upheld unless clearly erroneous. To be admissible for the purposes of establishing motive, intent, course of conduct or bent of mind, the State must show (a) sufficient evidence that the similar transaction occurred and (b) sufficient connection or similarity between the similar transaction and the crime alleged so proof of the former tends to prove the latter. When considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses because such evidence tends to establish that a defendant has such

---

[8] (Punctuation omitted.) *Hicks v. State*, 254 Ga. App. 814, 816 (3) (563 SE2d 897) (2002), citing *Bragg v. State*, 217 Ga. App. 342 (1) (457 SE2d 262) (1995).

[9] (Citations and punctuation omitted; emphasis omitted.) *Bragg*, supra at 343 (1). Accord *Lasseter v. State*, 197 Ga. App. 498, 499-500 (1) (399 SE2d 85) (1990).

[10] See *Sanders v. State*, 145 Ga. App. 73, 74 (243 SE2d 274) (1978) (convictions reversed where evidence showed that indecent acts were committed but that the victims were not enticed to the premises).

bent of mind as to initiate or continue a sexual encounter without a person's consent.[11]

Turner testified that she was Henderson's niece and that he molested her when she was four years old and again when she was seven or eight. At the time of trial, Turner was 49 years old, so the alleged molestation occurred, at the very least, 41 years earlier. Randi Leigh testified that she was Henderson's granddaughter and acknowledged that she gave a statement that Henderson had molested her twenty times when she was between the ages of seven and nine. Randi Leigh was 20 years old when she gave the statement; thus, the abuse occurred approximately 15 years before the trial.

> As a general rule, the lapse of time generally goes to the weight and credibility of the evidence, not to its admissibility. Nonetheless, where similar transactions are particularly remote because they were committed decades in the past, the passage of time is one of the more important factors to weigh in considering the admissibility of the evidence in question, although it is not wholly determinative. This factor takes on heightened significance when the similar transaction evidence is comprised of alleged acts for which there is no prior record of their occurrence.[12]

However, "[w]here different generations are involved, as in the case sub judice, obviously many years are going to lapse between the acts."[13] Accordingly, we have held that "similar transaction evidence that shows a pattern of sexual abuse against several generations of members of the same family is admissible despite the lapse of time between the acts."[14] Therefore, in such cases, evidence that was decades old has been admitted as similar transaction evidence.[15]

Although our Supreme Court held in *Gilstrap v. State*[16] that an event that occurred 31 years in the past was too remote to be admitted as similar transaction evidence,[17] it nonetheless declined to

---

[11] (Citations and punctuation omitted.) *Payne v. State*, 285 Ga. 137, 138 (674 SE2d 298) (2009).

[12] (Citations and punctuation omitted; emphasis omitted.) *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009).

[13] (Citation omitted.) *Bryson v. State*, 210 Ga. App. 642, 644 (2) (437 SE2d 352) (1993).

[14] (Footnote omitted.) *Wright v. State*, 259 Ga. App. 74, 75 (1) (576 SE2d 64) (2003). Accord *Corbitt v. State*, 301 Ga. App. 665, 666-667 (2) (688 SE2d 642) (2009).

[15] See *Wright*, supra at 75-76 (1) (34 years not too remote); *Bryson*, supra at 643-644 (2) (31 years not too remote).

[16] 261 Ga. 798 (410 SE2d 423) (1991).

[17] Id. at 799 (1) (b).

establish a bright-line rule from its holding in *Gilstrap*, stating in *Pareja*[18] that "[t]he determination of the admissibility of similar transaction evidence requires a balancing of probative value and prejudice which is individualized to the facts of each specific case."[19] The Court stated that "while a 31-year-old similar transaction was inadmissible in *Gilstrap*, an equally remote or older similar transaction might be admissible in a case involving a divergent set of facts."[20]

Here, the evidence displayed a course of conduct of Henderson's that involved the abuse of many generations of his family. Therefore, despite the lapse of time, we cannot conclude that the trial court abused its discretion when it admitted this evidence. Consequently, Henderson's enumerated error fails. We also point out that Henderson's argument that Randi Leigh's testimony should have been excluded because it was not credible is not pertinent to his similar transaction challenge. The issue of the witness's credibility was a matter for the jury's determination, not for this appellate court.[21]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2010.

*Patrick G. Longhi*, for appellant.
*Garry T. Moss, District Attorney, Holly L. Varner, Assistant District Attorney*, for appellee.

---

[18] Supra.
[19] Id. at 121.
[20] (Footnote omitted.) Id.
[21] See *Huggins v. State*, 239 Ga. App. 727, 728 (1) (521 SE2d 888) (1999).
[1] See OCGA § 5-6-35 (a) (1).