## S11A0964. SAPP v. THE STATE.
### (719 SE2d 434)

HINES, Justice.

Raymond Trey Sapp appeals his convictions for the felony murder of Simpson Tyrone Cates, criminal attempt to possess cocaine, and possession of a firearm during the commission of a crime.[1] For the reasons that follow, we affirm in part and vacate in part.

---

[1] The crimes occurred on November 29, 2008. On February 5, 2009, a Burke County grand jury indicted Sapp, along with Christopher Derek Chance, for malice murder, felony murder while in the commission of criminal attempt to purchase cocaine and aggravated assault, and possession of a firearm during the commission of a crime. On March 11, 2010, Sapp and Chance were re-indicted for malice murder, felony murder while in the commission

Construed to support the verdicts, the evidence showed that Cates's cousin Carlos Pressley was a seller of illegal drugs. A relative of Sapp's, his co-indictee Christopher Derek Chance, was a regular customer of Pressley's. At 6:00 p.m. Friday, November 28, 2008, Sapp and Chance met Cates and Pressley on a rural road to purchase drugs; at this location, Pressley typically sold drugs from a parked car, having the purchaser's vehicle approach so as to have the driver's windows adjacent to each other, and exchanging money and drugs through the open windows of the two vehicles. However, because Cates's car was used for this exchange and the windows in it did not work properly,[2] Pressley exited the car to make the exchange. After the exchange, the parties departed the area.

Early the next morning, Pressley received a telephone call from Chance, who wished to buy $150 worth of cocaine. Pressley, by telephone, arranged for Cates to make the sale at the same location where the parties had met a few hours earlier. Cates arrived in his car, and Chance and Sapp later arrived in Chance's pickup truck. At trial, Sapp testified consistent with a statement he gave to law enforcement personnel the day after the shooting, that: he was in the passenger seat of Chance's pickup truck; Chance was in the driver's seat; Chance parked the truck so as to be able to reach through the driver's side window of his truck and the driver's side window of Cates's car; Chance received the drugs from Cates; Chance dropped the drugs in the truck, reached down as though to retrieve them, but picked up a shotgun; Chance shot Cates through the open windows of the two vehicles; and that this was a surprise to Sapp. When Cates's car was found, the engine was running, the car doors and windows were closed, and Cates's body was behind the steering wheel, with the torso leaning down to the right. Physical evidence showed that: Cates had been shot at close range in the left side of the head; there were blood stains on the interior of the driver's side

---

of criminal attempt to possess cocaine and aggravated assault, possession of a firearm during the commission of a crime, and criminal attempt to possess cocaine. Sapp was tried alone on the second indictment, before a jury, on March 23-27, 2010. He was found not guilty of malice murder, and guilty of felony murder while in the commission of criminal attempt to possess cocaine, possession of a firearm during the commission of a crime, and criminal attempt to possess cocaine. On March 27, 2010, the trial court sentenced Sapp to life in prison for felony murder, a term of five years in prison for possession of a firearm during the commission of a crime, to be served consecutively to the life term, and a term of five years in prison for criminal attempt to possess cocaine, to be served concurrently with the other two prison sentences. On April 14, 2010, the trial court entered an identical sentence, nunc pro tunc to March 27, 2010. Sapp filed a notice of appeal on April 21, 2010, his appeal was docketed in this Court for the April 2011 term, and submitted for decision on the briefs.

[2] Evidence was presented that, in certain tests conducted after Cates was killed, the car's windows were inoperable, while in other tests, they could be operated, although it was usually necessary that the windows be pulled or pushed while the control was activated.

window of Cates's car; blood spatter patterns on the driver's side door of Cates's car indicated it was open when Cates was shot; DNA from a blood stain on the lower left side of a shirt of Chance's matched that of Cates.

1. The evidence was sufficient to enable a rational trier of fact to find Sapp guilty beyond a reasonable doubt of all the crimes of which he was convicted.[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). However, after the jury found Sapp guilty of felony murder while in the commission of the felony of criminal attempt to possess cocaine, and also of the felony of criminal attempt to possess cocaine, he was sentenced on each charge. But, he could not be sentenced on both felony murder and the underlying felony when found guilty of both. OCGA § 16-1-7; *Bolston v. State*, 282 Ga. 400, 401 (2) (651 SE2d 19) (2007); *Thomas v. State*, 256 Ga. 176, 177 (3) (345 SE2d 350) (1986). We therefore must vacate the separate judgment of conviction and sentence for criminal attempt to possess cocaine. *Nix v. State*, 280 Ga. 141, 142 (2) (625 SE2d 746) (2006).

2. Sapp contends that the trial court erred in failing to instruct the jury on the law regarding proximate cause and its relationship to felony murder. Under OCGA § 17-8-58 (a),[4] Sapp was required to "inform the court of the specific objection and the grounds for such objection before the jury retire[d] to deliberate." At the close of the jury instructions, Sapp did not do so, merely stating that he renewed his objections made during the jury charge conference. But, no transcript of the jury charge conference is in the record, and the parties state that it was not recorded. Thus, this Court will ordinarily presume that the trial court acted correctly. *Parks v. State*, 248 Ga. App. 405, 406 (2) (544 SE2d 536) (2001); *Adams v. State*, 234 Ga. App. 696, 697 (2) (507 SE2d 538) (1998).

Despite his failure to demonstrate that he raised an objection to the jury not receiving an instruction regarding proximate cause and its relationship to felony murder, Sapp argues to this Court that the omission of a specific instruction on this subject constitutes plain error. Plain error must be addressed on appeal in this circumstance.

---

[3] The jury was instructed on the law regarding parties to a crime.

[4] In its entirety, OCGA § 17-8-58 reads:
    (a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.
    (b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

See *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011). In *Kelly*, supra, this Court set forth the test for determining whether there is plain error in jury instructions.

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the [trial] court proceedings." Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error — discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' "

Id. at 33 (2) (a).

The record does not demonstrate whether Sapp affirmatively waived the alleged error.[5] And, he did not file a written request to charge on proximate cause,[6] nor does he now state what specific language should have been charged to the jury that would have been adjusted to the evidence. See *Roper v. State*, 281 Ga. 878, 880 (2) (644 SE2d 120) (2007). But, assuming that the circumstances of this case indicated that the jury should have been instructed on a definition of proximate cause, the omission of the definition cannot be considered an error "clear or obvious, rather than subject to reasonable dispute." *Kelly*, supra.

As to causation, the jury was instructed that to find Sapp guilty of felony murder while in the commission of felony criminal attempt to possess cocaine, it must "find beyond a reasonable doubt that the felony was dangerous per se or . . . by the attendant circumstances in this case created a foreseeable risk of death . . . ." And, the jury was instructed that, for felony murder to be found, it must find that, in the commission of the underlying felony, Sapp "cause[d] the death of

---

[5] Sapp has not arranged for the creation of a substitute for a transcript of the jury charge conference. See OCGA § 5-6-41 (f), (g); *Glass v. State*, 289 Ga. 542, 545-546 (2), (3) (712 SE2d 851) (2011).

[6] Sapp requested that the jury be instructed that the defendant "must directly cause the death of the victim to be convicted of felony murder," but this language was not given. See *State v. Jackson*, 287 Ga. 646 (697 SE2d 757) (2010).

another human being irrespective of malice." Finally, the jury was instructed that

> during the commission of the offense of criminal attempt to possess cocaine, there must be some connection between the felony and the homicide. The homicide must have been done in the carrying out of the unlawful act and not collateral to it. It's not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such legal relationship between the homicide and the felony so as for you to cause you to find [sic] that the homicide occurred before the felony was at an end. The felony must have a legal relationship to the homicide, and be at least concurrent with it in part, and be a part of it in an actual and an [sic] material sense. A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

"Jury instructions are read and considered as a whole in determining whether there is error. [Cit.]" *White v. State*, 281 Ga. 276, 280 (4) (637 SE2d 645) (2006). As the court gave the above charges, the omission of additional language concerning proximate cause cannot be considered a clear or obvious error, see *Kelly*, supra at 34 (2) (b), and the second prong of the plain error test cannot be met.

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 21, 2011 —
RECONSIDERATION DENIED DECEMBER 8, 2011.

*Jerry M. Daniel*, for appellant.
*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.