**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

November 29, 2012

# In the Court of Appeals of Georgia

A12A0838. WHORTON v. THE STATE.

RAY, Judge.

After a jury trial, Jackie Whorton was convicted of one count of enticing a child for indecent purposes,[1] seven counts of child molestation,[2] one count of incest,[3] two counts of aggravated child molestation,[4] and three counts of cruelty to children in the first-degree.[5] Whorton appeals the denial of his motion for new trial, arguing that the trial court erred in failing to provide a limiting instruction regarding similar

---

[1] OCGA § 16-6-5 (a).

[2] OCGA § 16-6-4 (a).

[3] OCGA § 16-6-22 (a).

[4] OCGA § 16-6-4 (c).

[5] Whorton was acquitted on three additional counts of cruelty to children in the first-degree. OCGA § 16-5-70.

transaction evidence and by not granting a request for a continuance, and that he received ineffective assistance of counsel. Whorton also challenges the sufficiency of the evidence. Finding no reversible error, we affirm.

As a threshold matter, we note that on appeal from a criminal conviction,

> we view the evidence in the light most favorable to the jury's verdict, and [Whorton] no longer enjoys a presumption of innocence. And we neither weigh the evidence nor assess witness credibility, which are tasks that fall within the exclusive province of the jury.[6]

Viewed in the proper light, the evidence adduced at trial shows the following: Whorton came to live with his daughter, his granddaughter G. G., and his grandsons at their home in Canada so that he could care for the children while their mother worked during the day. While Whorton was living in Canada, he took G. G. on several trips to her mother's other home in Jones County, Georgia. During one of these trips, Whorton's truck experienced transmission failure, requiring Whorton and G. G. to stay at a hotel for a week while the truck was repaired. At the hotel, Whorton forced G. G., over her objections, to watch a pornography video. On at least two other trips to Jones County, G. G. and Whorton slept in the same bed. It was during one of

---

[6] (Punctuation and footnotes omitted.) *Lipscomb v. State*, 315 Ga. App. 437, 439 (727 SE2d 221) (2012).

the nights in Jones County that Whorton undressed G. G., who was 12 years old at the time, began to caress her, made her perform oral sex on him, and then engaged in sexual intercourse with her. G. G. testified that "[i]t hurt really bad. . . . I don't know if it – he did it all the way or went halfway in . . ." On another of these trips, Whorton again undressed G. G. and attempted to engage in intercourse with her but was unsuccessful in maintaining an erection.

The summer after G. G. turned 13, she moved to the Jones County house with her family. Whorton again lived with the family and homeschooled G. G. and her brothers. G. G. testified that Whorton attempted sexual intercourse with her at least once while they lived in that house, but that she did not remember many of the details surrounding the incident because she had become "a pro at fading out and not feeling the pain." G. G. also testified that Whorton would frequently fondle her inappropriately, "pull his pants down and flash [her]," and would force her to watch pornography on his computer. Whorton would also "pinch [G. G.'s breasts] or . . . squeeze really hard" as punishment for bad behavior.

At some point after that, G. G. told Whorton that she believed she was pregnant. G. G. testified that this information made Whorton mad and that he "hit me and I fell to the floor, and then he just started kicking me in the stomach." After this

incident, G. G. testified that Whorton stopped trying to have sex with her because "[he] couldn't get hard at all." However, Whorton continued to visit G. G. in her room at night on a weekly basis and start "messing with me, and touching me, and trying to undress me."

G. G.'s brothers shared a bedroom located next to her room. They testified that at least once a week, they would hear Whorton go into G. G.'s room at night, and G. G. would say "[n]o, no, stop it. Get out."

G. G. testified that she never told anyone about the abuse because Whorton told her that she "would be the one to get in trouble . . . if [she] told," and that she would be "kicked out" and her mom would not believe her. At some point, G. G. felt that she "just had to get out of the situation [because she] couldn't stand it no more." So, she packed her bags and was ready to run away when she decided to confide in her mom first. When G. G. told her mother about the abuse, G. G.'s mother removed the children from the house. G. G. was then interviewed and submitted to a forensic examination at the Crescent House.

At trial, Dr. Debbie West, the doctor who conducted the forensic examination, testified that G. G. had two crescent shaped scars on her hymen that led the doctor to

conclude that there had "been penetration through her hymen. . . consistent with sexual abuse.

1. Whorton contends that the evidence presented was insufficient to sustain his convictions.

(a) Whorton specifically argues that the evidence was insufficient to sustain his conviction on Count 1 of the indictment, which charged him with enticing a child for indecent purposes by unlawfully enticing and taking G. G. into a bedroom for the purpose of committing child molestation. Whorton contends that this particular conviction cannot stand because G. G. and Whorton lived in the same home, and accordingly, there was "no evidence that [G. G.] was enticed into any bedroom at any time."

Under 16-6-5 (a) "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." The statute "has been held to include the element of 'asportation,' and our Supreme Court has held that this element is satisfied whether the 'taking' involves

physical force, enticement, or persuasion."[7] Further, "[a]ny asportation, however slight, is sufficient to show the taking element of enticing a child for indecent purposes."[8]

The case relied upon by Whorton, *Henderson v. State*,[9] is inapposite. In *Henderson*, this Court found that there was no evidence of taking or asportation in a child molestation case where the interviews of the child witnesses indicated that the defendant would join the victims in whatever room they were already in when the molestation occurred rather than entice them to come into another room.[10] In the present case, on the other hand, the transcript of G. G.'s interview at the Crescent House showed that Whorton had a computer in his bedroom that sat next to his bed, and when G. G. was in another part of the house, Whorton would call G. G. into his bedroom and show her "different porno sites, pictures of naked men, naked women."

---

[7] (Punctuation and footnote omitted.) *Henderson v. State*, 303 Ga. App. 531, 533 (2) (694 SE2d 185) (2010).

[8] (Punctuation and footnote omitted.) Id. at 533-534 (2).

[9] Id.

[10] Id. at 534 (2).

We find that there was sufficient evidence to sustain Whorton's conviction on Count 1.[11]

(b) Whorton next argues that the evidence was generally insufficient to sustain the remainder of his convictions, arguing that because there were "many inconsistencies and contradictions in [G. G.'s] testimony [that] destroy her credibility, and [because] there was no real corroboration in the case, the conviction should be set aside." Specifically, Whorton points to G. G.'s testimony that she could not remember exactly what acts of abuse took place on certain trips with her grandfather, that although G. G. testified that her mother was in the home as she yelled for help during one of the first incidents of abuse, she did not come into the living room to check on her daughter, and that when asked by a counselor at the Crescent House to draw a picture of a penis, she drew a picture of a circumcised penis even though she testified at trial that her grandfather's penis was uncircumcised. According to

---

[11] See *Hanson v. State*, 305 Ga. App. 900, 900-901 (1) (700 SE2d 896) (2010) (evidence supported conviction for enticing a child for indecent purposes when defendant admitted, among other things, that he watched pornographic videos with a 12- or 13- year old child). But compare *Bragg v. State*, 217 Ga. App. 342, 343 (1) (457 SE2d 262) (1995) (asportation element of enticing a child for indecent purposes was not satisfied by evidence that defendant threatened to punish children if they left or attempted to leave the room during showing of pornographic film; there was no evidence that defendant caused children to move towards place from which they could view movies).

7

Whorton, these inconsistencies, combined with G. G.'s "memory issues" concerning certain facts, require a finding that no reasonable jury could have found the victim's testimony to be credible. Thus, Whorton argues, because G. G. was not credible and because the State's evidence did not conclusively prove that G. G.'s hymen had been torn via sexual intercourse, his convictions must be reversed due to insufficient evidence.

"When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[12] It is well-settled that

> it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even

---

[12] (Citation and punctuation omitted.) *Knight v. State*, 311 Ga. App. 367, 367 (1) (715 SE2d 771) (2011).

8

though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[13]

Moreover, "the victim's testimony alone is generally sufficient to establish the elements of child molestation."[14]

In this case, the acts of molestation took place when Whorton was alone with G. G., so there were no eyewitnesses who could provide direct testimony about what occurred. Even if uncorroborated, however, the victim's testimony was sufficient to support Whorton's convictions on each count, as indicted. Further, as noted above, the expert testimony of the physician who conducted the forensic exam showed that G. G. had scarring on her hymen leading the doctor to conclude that there had been penetration through her hymen consistent with sexual abuse.

Consequently, because the victim's testimony was legally sufficient to support Whorton's convictions, and because the jury, alone, was authorized to judge the credibility of G. G.'s testimony, Whorton's challenge to the sufficiency of the evidence must fail.

---

[13] (Citations and punctuation omitted.) Id. at 368 (1).

[14] (Citation omitted.) Id.; OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact").

2. Whorton next contends that the trial court erred in denying his motion for a continuance. It is well-settled that this court will not reverse a trial court's ruling on a motion for a continuance absent a manifest abuse of discretion.[15] Further, "to be entitled to a new trial based upon the denial of his motion for a continuance, the defendant has the burden to show that he was harmed by that denial."[16]

Whorton's trial counsel was hired forty days prior to trial after his original attorney had to withdraw suddenly from the case after being arrested on charges of child molestation. Prior to agreeing to represent Whorton and filing an entry of appearance, Whorton's trial counsel was notified of the trial date during a phone conference with the trial judge and the prosecutor. Whorton's trial counsel sought a continuance at that time, but the trial court denied her motion. The week prior to trial, Whorton's trial counsel contacted the trial court and informed the court that she was ready to proceed. However, trial counsel then filed a motion for continuance citing difficulties finding an expert witness willing to testify in support of Whorton's key

---

[15] *Holloway v. State*, 278 Ga. App. 709, 712 (2) (629 SE2d 447) (2006).

[16] (Citation and punctuation omitted.) *Williams v. State*, __ Ga. App. __ (3) (730 SE2d 726, 733) (2012).

10

defense, that his diabetes-related complications left him unable to engage in sexual intercourse. The trial court denied the motion.

It is well-settled that,

[m]ere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses. Additionally, when there is no showing that a continuance would have benefitted the defendant, he has not established harm in the denial of the continuance, and the same cannot constitute reversible error.[17]

In the present case, defense counsel accepted the representation with knowledge of the trial date and announced to the trial court a week earlier that she was ready to proceed with trial. Whorton's case was not convoluted. There was no DNA evidence presented at trial, and the victim was the only eyewitness to the alleged crimes. Further, Whorton was able to present testimony from a medical expert and from his own physician in support of his defense. Whorton presented the testimony of Dr.

---

[17] (Citation and punctuation omitted.) *Miller v. State*, 303 Ga. App. 422, 423 (693 SE2d 637) (2010) (affirming the denial of a motion for continuance when trial court noted that defense counsel had accepted the representation and entered an appearance with knowledge of the trial date, and that he originally announced ready for trial).

11

Candi Nobles-James indicating that because of Whorton's diabetes, he had low testosterone levels that could cause him to have difficulty in achieving and maintaining erections. Nobles-Jones also testified that as of the time of trial, two years after the molestation was reported, Whorton was impotent and likely had no interest in sex. Whorton also presented the testimony of his family physician that he had seen from 1996 to 2002, who testified that even though he made no notes on Whorton's medical chart, he recalled a conversation where Whorton had complained about having erectile dysfunction.

Further, Whorton's trial counsel was unable to demonstrate that he was harmed by the denial of the continuance. "To show harm, [Whorton] was required to specifically identify what evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough."[18] Although Whorton's counsel testified in the motion for continuance hearing that she hoped to find another expert witness to provide additional evidence that Whorton was impotent and suffered from erectile dysfunction, she did not specifically state what kinds of experts she was seeking and

[18] (Citation and punctuation omitted.) Id. at 424.

what additional testimony she thought they would provide.[19] Accordingly, the trial court did not err in denying the motion for continuance.

3. At trial, G. G. testified to several other acts of sexual molestation by Whorton that occurred outside of Jones County prior to the incidents charged at trial. Whorton argues that the trial court erred in not providing a limiting instruction to the jury regarding this evidence of prior difficulties between the parties and that his trial counsel was ineffective for failing to object to this omission.[20]

---

[19] Although Whorton's trial counsel testified during the motion for new trial hearing that she would have liked more time and money to locate a urologist to do physical testing and to testify, that information was not before the trial court at the time it denied the motion. When reviewing "a trial court's ruling on a motion for continuance, we look at the evidence presented at the time of ruling, not at the evidence available at the motion for new trial hearing." *Foote v. State*, 251 Ga. App. 427, 429 (1) (553 SE2d 644) (2001) (footnote omitted).

[20] Although the parties and the trial court refer to these incidents as similar transactions, they are best characterized as prior difficulties. "Unlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus." *Withers v. State*, 282 Ga. 656, 658 (2) (653 SE2d 40) (2007).

Although Whorton did submit a written request for limiting instructions prior to trial, no transcript of the jury charge is on the record, and the parties state that it was not recorded. Thus, this Court will presume that the trial court acted correctly.[21]

Further, Whorton's ineffective assistance claim as to this enumeration must fail because this issue was not raised at the hearing on Whorton's motion for new trial. "The contentions of ineffectiveness not raised on motion for new trial by counsel appointed to represent [Whorton] after conviction are waived."[22]

4. Whorton contends that his trial counsel provided ineffective assistance in several other respects.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. As the appellate court, we

---

[21] See *Sapp v. State*, 290 Ga. 247, 249 (2) (719 SE2d 434) (2011). Both parties correctly note that we need not engage in the plain error analysis required by OCGA § 17-8-58 (b) because the trial occurred prior to the statute's July 1, 2007, effective date. See Laws 2007, Act 237, § 1.

[22] (Citation omitted.) *Spear v. State*, 270 Ga. 628, 632 (5) (513 SE2d 489) (1999).

14

accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principals to the facts. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.[23]

(a) Whorton contends that his defense counsel rendered ineffective assistance by failing to move for a directed verdict as to Count 1 of the indictment, which charged Whorton with enticing a child for indecent purposes. However, as discussed in Division 1 (a), supra, the State presented evidence sufficient to survive such a motion for a directed verdict. Accordingly, Whorton's trial counsel was not ineffective for failing to move for a directed verdict on this charge.[24]

(b) At the conclusion of her cross-examination of G. G., Whorton's trial counsel reserved the right to recall the victim to the stand, but she did not do so. Whorton alleges that this failure to recall G. G. to the stand constituted ineffective assistance.

---

[23] (Citations and punctuation omitted.) *Gant v. State*, 313 Ga. App. 329, 331 (1) (721 SE2d 913) (2011).

[24] See *Patterson v. State*, 272 Ga. App. 675, 679 (5) (b) (613 SE2d 200) (2005) (trial counsel did not provide ineffective assistance by failing to make a motion for a directed verdict when the evidence presented at trial was sufficient to survive such a motion).

15

At the motion for new trial, Whorton's trial counsel testified that she noticed that G. G., who spent much of the trial waiting in an adjacent law library, "came into court, dressed, acted [like she was] taking the situation very seriously, and then, in the back, . . . [was] a lot more provocative in speech, dress, and thought." However, neither in the motion for new trial nor on appeal does Whorton explain how bringing G. G. back to the stand to explain these inconsistencies in her dress and behavior would have changed the outcome of the trial. Further, defense counsel testified that she did not bring G. G. back to the stand to discuss this "provocative" behavior because she did not think it was wise to do so and she did not want to potentially violate the Rape Shield Statute. This strategy was reasonable, and "[a]s a general rule, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel."[25]

(c) Whorton next argues that his trial counsel rendered ineffective assistance of counsel by failing to argue that others had equal access to Whorton's computer on which pornographic material was found. However, this argument is without merit as

---

[25] (Citation omitted.) *Wright v. State*, 274 Ga. 730, 732 (2) (b) (559 SE2d 437) (2002).

16

Whorton was neither charged with nor convicted of possession of pornography.[26] Accordingly, we find that the equal access doctrine does not apply to Whorton's convictions and that his defense counsel did not provide ineffective assistance in failing to raise the defense.

(d) Arguing that it is error for the trial court to charge the jury on flight, Whorton contends that his trial counsel provided ineffective assistance by failing to object to improper comments made by the prosecutor to the jury. During closing argument, the prosecutor referenced evidence tending to show that Whorton intended to leave town and disappear while out on bond to avoid criminal charges. The prosecutor then stated that "[o]nly the wicked man flees when no man pursueth." However, the trial court did not charge the jury on flight and it is not error for the State to argue flight.[27] Accordingly, we find that trial counsel did not render ineffective assistance for failing to object to this comment.

---

[26] See *Clewis v. State*, 293 Ga. App. 412, 415 (2) (667 SE2d 158) (2008) (applying equal access doctrine to charges of possession of child pornography).

[27] *Renner v. State*, 260 Ga. 515, 518 (3) (b) (397 SE2d 683) (1990) ("while the [s]tate may offer evidence of and argue flight, it shall be error for a trial court in a criminal case to charge the jury on flight").

(e) Whorton next argues that his trial counsel rendered ineffective assistance by failing to object to improper bolstering and opinion testimony by the State's witnesses. However, this argument is waived because it was not raised in Whorton's motion for new trial nor was it argued before the trial court in the motion for new trial.[28]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[28] See *Spear*, supra.