**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 11, 2014**

# In the Court of Appeals of Georgia

A14A1275. PIERRE-LOUIS v. THE STATE.                    DO-047 C

DOYLE, Presiding Judge.

Chad Pierre-Louis was charged with family violence aggravated assault,[1] cruelty to a child in the first degree,[2] cruelty to a child in the second degree,[3] and family violence battery.[4] A Douglas County jury found him guilty of cruelty to children in the second degree, and he was acquitted of the remaining three charges. Pierre-Louis appeals, arguing that the trial court erred by denying his motion for a

---

[1] OCGA § 16-5-21 (b) (2) & (k).

[2] OCGA § 16-5-70 (b).

[3] OCGA § 16-5-70 (c).

[4] OCGA § 16-5-23.1 (a) & (f).

directed verdict because the evidence was insufficient to support his conviction. We disagree and affirm.

In Georgia, a person commits the offense of cruelty to children in the second degree "when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain."[5] "Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."[6]

When reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7]

So viewed, the evidence showed that on November 16, 2011, at approximately 10:00 p.m., witnesses observed a woman on the side of the road beating her crying three-year-old son with her hands and what appeared to be a stick while a man stood

---

[5] OCGA § 16-5-70 (c).

[6] OCGA § 16-2-1 (b).

[7] (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

nearby and watched. Stephanie Langley, who was present when another woman who witnessed the beating ran into a gas station to call for help, raced to the scene to intervene. When Langley arrived, the mother was standing by the child with a stick, and the child was sitting on the ground. Langley honked her horn, stopped, and asked whether everything was okay. Pierre-Louis approached Langley's car, calmly advised her that the mother was "just disciplining her child," and asked for a cigarette.

Police arrived at the scene shortly thereafter, and they observed Pierre-Louis and the mother – his girlfriend – walking on the side of the road approximately 20 to 25 feet behind her son. The child was soaking wet and covered in mud from head to toe; he was bleeding from his mouth, had welts on his back and a three-inch scratch on his neck, and was shaking uncontrollably.[8] The mother told police that she "beat" her son because he "had been disrespecting her."[9] Pierre-Louis told police that he and the mother took the child out of their house to discipline him for "being disrespectful

---

[8] The emergency room physician testified the child had approximately 30 to 40 bruises.

[9] The mother was also charged with family violence aggravated assault, cruelty to children in the first degree, cruelty to children in the second degree, and family violence battery. Pierre-Louis was tried separately.

by crying." Pierre-Louis explained that he did not stop her from striking the child because he would go to jail if he "put his hands on [her]."

The mother, who was in custody at the time, testified at the trial that she had entered a guilty plea. She stated that she left home with her son to calm him down because he was crying loudly, and she repeatedly "beat" him with a tree branch before they returned home. According to the mother, Pierre-Louis arrived on the scene after she beat the child and was not present during the beating. Pierre-Louis's father also testified that Pierre-Louis left the house alone on the night of the incident.

The jury was entitled to disbelieve the testimony of the mother and Pierre-Louis's father that Pierre-Louis was not present at the time the mother beat the child.[10] Given the evidence that Pierre-Louis stood by and failed to intervene while the mother repeatedly struck the crying child with a tree branch, inflicting multiple injuries, the jury was authorized to conclude that Pierre-Louis "had failed to intervene

---

[10] See *Whorton v. State*, 318 Ga. App. 885, 888 (1) (b) (735 SE2d 7) (2012) ("[I]t is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.") (punctuation omitted), quoting *Knight v. State*, 311 Ga. App. 367, 368 (1) (715 SE2d 771) (2011).

to prevent the injuries . . .[,] thereby demonstrating a wilful, wanton, or reckless disregard for the child's safety."[11] Accordingly, there was sufficient evidence to support his conviction for cruelty to a child in the second degree.

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[11] *Morast v. State*, 323 Ga. App. 808, 812 (748 SE2d 287) (2013) (affirming conviction for second-degree child cruelty based on evidence that although the defendant did not personally cause bone fractures in the child, defendant was aware that the fractures were being inflicted by another person over a 13-month period, and the defendant failed to prevent the injuries from recurring). See OCGA §§ 16-5-70 (c) & 16-2-1 (b). See also *Johnson v. State*, 292 Ga. 856, 858 (1) (742 SE2d 460) (2013) (affirming conviction for second-degree cruelty to a child based on evidence that the defendant "acted with willful, wanton, or reckless disregard for her son's safety, both in failing to prevent [him] from accessing her medication and in failing to seek medical treatment once it became clear he was ill").