**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_**DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.**_

**June 29, 2020**

# In the Court of Appeals of Georgia

A20A0394. HOGG v. THE STATE.

BROWN, Judge.

A jury convicted Randall Hogg of aggravated sexual battery, stalking, and three counts of child molestation in 2005. Hogg appeals his convictions and the denial of his amended motion for new trial, arguing insufficient evidence and ineffective assistance of counsel. For the reasons explained below, we affirm Hogg's convictions, but vacate his sentence as to Counts 1 and 3 of the indictment and remand the case for resentencing.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." _Smith v. State_, 348 Ga. App. 643, 643-644 (824 SE2d 382) (2019). So viewed, the evidence shows that Hogg was married to the victim's maternal aunt. The

aunt kept the victim from the time she was an infant to three years old, while the victim's mother worked. The victim's mother eventually enrolled her in daycare when the aunt needed to go back to work.

In July 2004, the mother arrived at the daycare to drop off the then five-year-old victim. When the mother exited the daycare, Hogg was parked outside of the entrance and asked to speak with the victim. The mother was unsure whether the daycare would allow Hogg to go inside to speak with the victim so Hogg agreed to just wave at the victim through the window. The victim refused to come to the window to see Hogg. On the following day, the mother again was dropping off the victim at daycare when Hogg pulled into the parking lot. The victim refused to get out of the car, hid under her blanket, and refused to acknowledge Hogg. The mother testified that this behavior toward Hogg was unusual. She further testified that around this time, she noticed the victim had become "stand-offish" toward Hogg and did not want to be around him or for him to touch her, which the mother called "a big change." Due to the victim's unusual behavior, the mother stayed inside the daycare with her until Hogg left. On the following day, Hogg again came to the daycare at the time the mother was dropping off the victim. The mother testified that Hogg pulled up to the daycare window, attempting to look inside, causing the victim to cry. The

2

victim's teacher testified that the victim curled into the fetal position in a corner when Hogg appeared outside the window, looking for her. After leaving, the mother informed Hogg that she did not want him coming to the daycare again, and Hogg appeared angry at her request. The mother testified that on the following day, the victim did not want to go to daycare because she believed Hogg would be there looking at her. The victim told her that this made her "uncomfortable" and that when Hogg looked at her, "her skin got hot . . . and her arms . . . were prickly."

The daycare director contacted the mother and the police after teachers reported Hogg showing up at the daycare and the victim's resulting behavior. In response, an officer was posted at the daycare, and a detective contacted the mother and recommended that the victim undergo a forensic interview. During the interview, the victim refused to discuss Hogg and did not make any disclosures. That night, while the victim was taking a bath, the mother noticed the victim touching her genital area with a soap bottle. When the mother told her not to do that, the victim replied, "well [Hogg] does." The victim then explained that Hogg had taken her to a park and touched her private parts "in the front twice and once in the back." The mother contacted the detective the next day to report what the victim had disclosed, and the detective set up a second forensic interview for that day.

During the second interview, the victim was again reluctant to talk and intimated that she wanted the mother present. The detective testified that he allowed the mother to sit in the interview room, but instructed her not to suggest anything or ask any questions. While the mother sat in the room, the victim again disclosed that Hogg had molested her, motioning to her vagina and bottom. Both interviews were recorded and played for the jury, but both recordings were lost at some point during the fourteen-year period between the 2005 trial and this appeal.

In the week following the victim's initial disclosure, the victim provided the mother with more details. The mother testified that the victim explained that Hogg had raised up her dress when she was on the swings and put his hands inside her panties, with one hand in the front and the other in the rear. The victim told her that it had hurt when Hogg touched her bottom. The victim also told her that she had seen Hogg's "swim pants," what the victim called men's underwear. The victim explained that she had hit Hogg's hand and told him to stop and that he then walked away from her and the "bushes [were] shaking." The victim told the mother that Hogg said they could not go home until "the smell went away," and the victim clarified: "my smell, it was on his hands."

4

The victim's other aunt testified that a few months after the initial disclosure, the victim spontaneously disclosed to her that Hogg had touched her private parts. The other aunt testified that the victim referred to Hogg as a "monster," was scared of him, and drew pictures of Hogg behind bars. The victim testified during the trial that Hogg had touched her private parts at a park when no one was there and that he told her he would hit her if she told anyone. The victim refused to testify to any other details and denied some details that the mother had testified the victim told her. Hogg testified in his defense and denied ever taking the victim to a park alone or touching her inappropriately. The jury returned a guilty verdict on all counts in the indictment, and the trial court sentenced Hogg to 40 years to serve 15 in confinement.

1. Hogg contends the evidence was insufficient to support his convictions based on inconsistencies in the victim's story and testimony.

> It is well settled that it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation and punctuation omitted.) *Whorton v. State*, 318 Ga. App. 885, 888 (1) (b) (735 SE2d 7) (2012). Here, the victim's testimony alone was legally sufficient to support Hogg's convictions. See Id. at 889 (1) (b); *Stillwell v. State*, 294 Ga. App. 805, 806 (1) (670 SE2d 452) (2008). See also OCGA § 24-14-8. Moreover, "[c]onflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to resolve," *Newton v. State*, 296 Ga. App. 332, 335 (1) (a) (674 SE2d 379) (2009), and the jury, alone, was authorized to judge the credibility of the victim's testimony. *Whorton*, 318 Ga. App. at 889 (1) (b). See also *Stillwell*, 294 Ga. App. at 806 (1). Accordingly, this argument lacks merit.

Hogg also argues that the evidence was insufficient to support his convictions under Counts 3 and 4 of the indictment because there was no evidence presented at trial that he inserted his fingers into the victim's vagina. Count 3 charged Hogg with committing the offense of child molestation by "insert[ing] his finger in the vagina of [the victim]" while Count 4 charged him with committing aggravated sexual battery by "penetrat[ing] with a foreign object the sexual organ of [the victim]."

"[P]enetration may be proved by indirect or circumstantial evidence." (Citation omitted.) *Chitwood v. State*, 352 Ga. App. 218, 220 (1) (a) (834 SE2d 334) (2019). Here, the mother testified that the victim disclosed that Hogg had put his hands in the

6

front and rear, that it had hurt, and that Hogg had told her they could not go home until her smell on his hands went away. We conclude that this evidence was sufficient for a rational trier of fact to find that Hogg committed the offenses charged in Counts 3 and 4 of the indictment. See id. (evidence sufficient to show penetration in support of aggravated sexual battery conviction where the victim's mother testified that the victim told her defendant had hurt her by touching her vagina, victim testified that defendant had touched her "wrong spot," and physical examination revealed redness).

2. Hogg next contends that trial counsel was ineffective in failing to "speak up and tell the [trial] court that counts 3 and 4 in the indictment should have merged." Based on our review of his brief, Hogg has improperly framed a sentencing error claim as an ineffective assistance of counsel claim. Compare *Andrews v. State*, 320 Ga. App. 816, 818 (1) (b) (739 SE2d 445) (2013) (addressing defendant's contention that trial counsel was deficient in failing to properly advise him about the potential merger of charged offenses where defendant sought to withdraw his guilty plea). "A conviction that merges with another conviction is void — a nullity — and a sentence imposed on such a void conviction is illegal and will be vacated if noticed by this Court, even if no merger claim was raised in the trial court and even if the defendant

7

does not enumerate the error on appeal."[1] (Citation and punctuation omitted.) *Jones v. State*, __ Ga. App. __ (1) (c) (ii) (841 SE2d 112) (2020).

(a) *Counts 3 and 4.* As previously stated, Count 3 alleges that Hogg committed child molestation by inserting his finger into the victim's vagina, and Count 4 alleges that he committed aggravated sexual battery by penetrating the victim's vagina with a foreign object.[2]

Pursuant to OCGA § 16-1-7 (a),

[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

---

[1] The Supreme Court of Georgia has limited its own discretion in this regard, holding "that, when a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances." *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017).

[2] While the indictment does not specify the foreign object, the State asserted at trial that evidence was presented that the crime was proven by evidence of Hogg inserting his finger into the victim's vagina. See *Chitwood*, 352 Ga. App. at 220 (1) (a) ("[a] finger is considered a foreign object under OCGA § 16-6-22.2 (a)") (citation and punctuation omitted).

A crime is included in the other, under OCGA § 16-1-6 (1), where "[i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged."[3] When making this determination, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006): "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test considers whether each provision requires proof of a fact which the other does not. If so, then there are two offenses, and neither is 'included in' the other." (Citation and punctuation omitted.) *Gaston v. State*, 317 Ga. App. 645, 650 (3) (731 SE2d 79) (2012).

Turning to the offenses at issue, "[a] person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). OCGA § 16-6-4 (a) (1) pertinently provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent

---

[3] A crime is also included in the other where "[i]t differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." OCGA § 16-1-6 (2).

9

act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" It follows that the offense of aggravated sexual battery required proof of a fact that offense of child molestation did not: lack of consent.[4] And, the offense of child molestation required proof of a fact that the offense of aggravated sexual battery did not: "the intent to arouse or satisfy the sexual desires of either the child or the person." Accordingly, Counts 3 and 4 did not merge for purposes of sentencing.[5] See *Gaston*, 317 Ga. App. at 651 (3).

(b) *Counts 1 and 3.* Hogg does not raise any argument with regard to the merger of Counts 1 and 3, but, as previously stated, we "have the discretion to correct merger errors sua sponte." (Citation and punctuation omitted.) *Hawkins v. State*, 350 Ga. App. 862, 876 (a) (9) (830 SE2d 301) (2019). Count 1 of the indictment charged Hogg with child molestation by touching the "primary genital area" of the victim with

---

[4] We note that in *Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015), the Supreme Court construed the sexual battery statute "to require actual proof of the victim's lack of consent, regardless of the victim's age," overruling prior cases which held to the contrary. Id. at 720 (2).

[5] Nor do these counts merge under the other statutory provisions regarding merger. See *Metcalf v. State*, 349 Ga. App. 408, 414-424 (2) (825 SE2d 909) (2019).

his hand. Count 3 charged him with child molestation by inserting his finger into the victim's vagina.

> "Merger" refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those crimes. Merger analysis often involves counts charging two different crimes . . . [and] that is the context in which *Drinkard*'s "required evidence" test is applied. But merger questions may also arise when a defendant is charged with multiple counts of the same crime.

(Citations, punctuation, and emphasis omitted.) *Scott v. State*, 306 Ga. 507, 509 (2) (832 SE2d 426) (2019). See also *Busby v. State*, 332 Ga. App. 646, 650 (2) (b) (774 SE2d 717) (2015) ("Typically, the question is whether the same conduct may be punished under different criminal statutes. In that situation, it is appropriate to apply the 'required evidence' test[;] [h]owever, a different question is presented here: whether a course of conduct can result in multiple violations of the same statute[, which] requires a determination of the 'unit of prosecution. . . .'") (Citation and punctuation omitted.) "In this context, the merger analysis requires careful interpretation of the criminal statute at issue to identify the 'unit of prosecution' —

11

the precise act or conduct that the legislature criminalized." (Punctuation omitted.) *Scott*, 306 Ga. at 509 (2).

Here, our analysis turns on the interpretation of OCGA § 16-6-4 (a), which pertinently provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). Based on the plain language of the statute, the gravamen of the offense is the immoral and indecent act done to the child. Thus, each immoral or indecent act done to the victim in this case forms a "unit of prosecution." See *Busby*, 332 Ga. App. at 651 (2) (b) (each act causing malicious bodily harm to the victim forms a "unit of prosecution" under OCGA § 16-5-24 (a) (aggravated battery)).

We recently employed a unit-of-prosecution analysis in *Cobb v. State*, __ Ga. App. __ (__ SE2d __) (A19A2170, decided June 1, 2020), to conclude that two child molestation convictions involving the same victim did not merge. Id. at __ (3) (b). One count charged the defendant with touching the victim's breast, and one count charged the defendant with touching the victim's genitals, and the record showed that the attacks occurred more than 20 times over a charged period of over a year. Id.

12

Relying on language in *Scott*,[6] we reasoned that "a rational trier of fact could conclude that the acts of child molestation appear to have occurred in discrete incidents over a relatively long period," and thus the State was authorized to charge the two as separate units of prosecution. (Punctuation omitted.) Id.

In contrast, here, both Count 1 and Count 3 charge Hogg with touching, in some way, the victim's genitals, and the record shows that this occurred in a single incident. To be clear, Hogg could not insert his finger into the victim's vagina without first touching her primary genital area. We thus conclude that the conduct charged in Counts 1 and 3 of the indictment was a single unit of prosecution, and those counts should have merged for sentencing. See *McKee v. State*, 275 Ga. App. 646, 651 (5) (621 SE2d 611) (2005) (criminal conduct constituted a single course of

---

[6] Where the acts of child molestation appear to have occurred in discrete incidents, precisely identifying the applicable unit of prosecution may not affect the merger decision. By contrast, where the acts of molestation alleged in different counts were part of a single course of conduct occurring in a relatively short time frame, the unit of prosecution could determine if the defendant faces multiple, consecutive 20-year sentences or only one sentence.

(Punctuation and emphasis omitted.) *Cobb*, __ Ga. App. __ (3) (b), citing *Scott*, 306 Ga. at 510 (2).

13

conduct spanning several days, not a separate offense of cruelty to children for each day, where unit of prosecution was causing a child excessive physical or mental pain); *Ratledge v. State*, 253 Ga. App. 5, 7 (3) (557 SE2d 458) (2001) (one count of cruelty to children for "'placing [victim's] feet into excessively hot water'" merged with one count of cruelty to children for "'holding [victim's] feet in excessively hot water'" where both counts based on a single incident). Compare *Busby*, 332 Ga. App. at 650-652 (2) (b) (aggravated battery count based on "maliciously causing bodily harm to the baby by rendering her skull useless" did not merge with aggravated battery count based on "maliciously causing bodily harm to the baby by seriously disfiguring her head" where evidence showed that the baby was battered more than once, in separate incidents).

3. We would be remiss if we did not point out that this is a fifteen-year-old conviction on appeal for the first time. On April 18, 2005, trial counsel filed a notice of appeal from Hogg's conviction without first filing a motion for new trial. Jennifer Hildebrand was appointed as Hogg's post-conviction counsel on April 4, 2005. On April 28, 2005, Hildebrand filed a withdrawal of the notice of appeal, stating that she did not learn of the appointment until April 18, and that she was filing a motion for new trial on Hogg's behalf. Hildebrand filed the motion for new trial on the same day,

14

alleging insufficient evidence and the general grounds. The record reflects that the trial transcript was filed with the superior court clerk on June 29, 2006.

Nearly fourteen years after the motion for new trial was filed, the trial court judge ordered the superior court clerk to "release the case file" to the judge. On February 12, 2019, the trial court issued an order for a hearing on Hogg's motion for new trial. Nothing in the order references the fourteen-year delay. Hildebrand then filed an amended motion for new trial on February 27, 2019, fourteen years after filing the original motion for new trial. The one-page amended motion added a general claim for ineffective assistance of counsel. During the hearing, held on March 6, 2019, the trial court noted that Hildebrand had filed a motion for new trial in 2005, that the transcript had been filed in 2006, and that Hildebrand had not amended the motion until 2019, but the trial court apparently chose not to inquire into the reason for the years-long delay. The trial court denied Hogg's motion on June 19, 2019. Neither Hildebrand nor the State has explained the reason for this delay in their briefs.

This is the second case before this Court within the last year in which Hildebrand has been appointed as post-conviction counsel for a defendant, and in which there has been an exorbitant and unexplained delay during the appellate

process. See *Murphy v. State*, ___ Ga. App. ___ (Case No. A19A1986, March 9, 2020) (unpublished). As we pointed out in *Murphy*, "our Supreme Court 'has recognized that substantial delays experienced during the criminal appellate process implicate due process rights,' *Payne v. State*, 289 Ga. 691, 693 (2) (b) (715 SE2d 104) (2011)." Id. However, as in *Murphy*, Hogg's counsel, Hildebrand, has not enumerated this as error, and we are uncertain of our authority to resolve the issue sua sponte and therefore decline to do so. Compare *Bynum v. State*, 315 Ga. App. 392, 395-396 (3) (726 SE2d 428) (2012).[7]

In sum, we affirm Hogg's convictions, vacate his sentence as to Counts 1 and 3 of the indictment, and remand for resentencing consistent with our opinion.

*Judgment affirmed, sentence vacated, and case remanded for resentencing. Dillard, P. J., and Rickman, J., concur*.

---

[7] Nothing in our holding should be construed to mean Hogg is precluded from raising this claim in a habeas proceeding or further appeals.